THOMAS MONTAGUE *v.* SILAS WOLVESTON.
THOMAS FOREMAN *v.* GRINSTEAD & BRADLEY, ET AL.

**Judicial Sale—Bidders—Competition.**

A judicial sale of real estate will not be set aside because of an agreement between two or more persons to unite in the purchase, unless it is shown that such agreement was entered into with the fraudulent intention to stifle bidding and thereby obtain the property at a sacrifice.

**Ground for Setting Aside Sale.**

The fact that after a judicial sale has been made, one may offer to bid a higher price if the property be again offered, furnishes no ground for setting aside the sale made.

APPEAL FROM FAYETTE CIRCUIT COURT.

April 4, 1876.

OPINION BY JUDGE COFER:

To decide that the agreement between Wolveston and Brown to buy the livery stable property and divide it between them vitiated the sale, would be virtually to decide that any agreement between two or more persons to unite in the purchase of property at a judicial sale is unlawful. Such agreements are common, and unless entered into with the fraudulent intention to stifle bidding and thereby to obtain. property at a sacrifice, are not unlawful.

Neither Wolveston nor Brown was under any obligation to bid at all, and there is nothing in this record to show that either would have done so without the agreement made between them. Such agreements, if made bona fide, so far from being calculated to cause the sacrifice of property have an exactly opposite tendency.

Persons either unable or unwilling to buy the whole property offered for sale may, by combining, increase rather than diminish com-

petition. For ought that appears in this record such may have been the case in this instance. The statement of Brown that the property was worth $8,000 and he would be a bidder if made, placed him under no obligation to become a bidder, and it does not appear that the action of any other person was in anywise influenced by such statement. There is nothing to show that Wolveston would have been a bidder or that he was under any obligation to become one. There is, therefore, nothing to show that either Wolveston or Brown would have bid at all but for the arrangement by which they became jointly interested in the purchase.

The price realized for the stable property was, at the least two-thirds of its value, and the court, in the absence of evidence of fraud or unfairness, would not have been warranted in setting aside the sale. Although no one would at first offer to take less than the whole tract of land, and pay the balance of the judgments not satisfied by the sale of the stable property, yet, after a bidder had offered to take the whole tract and pay that sum, it was the duty of the commissioner to again inquire whether any one would take a less quantity and pay the debt, and until he did so he had no authority to call for advances in the amount. The first offer should have been "Who will take the tract and pay the balance of the judgments?" and when a bidder was found willing to do that, then and not until then, inquiry should have been made to ascertain whether any one would pay the balance for less than the whole. The commissioner already had no authority to sell for more money than would pay what remained unsatisfied until he had ascertained that no one would bid that amount for less than the whole tract.

The offer to give an advance of $1,500 on the price for which the stable property sold did not authorize the court to set aside the sale. *Stump v. Martin,* 9 Bush 285. While such a cause would undoubtedly benefit the debtor in this instance, the precedent it would establish would as undoubtedly operate to the prejudice of debtors whose property was thereafter offered for sale. One of the surest guaranties for fair prices is to be found in stability in such sales. We perceive no error in either judgment, and both are *affirmed.*

*Kinkead & Duvall, for Montague.*

*Z. Gibbon, for Foreman.*
*W. D. Boswell, for Wolveston.*