JUDGE PRYOR
delivered the opinion oe the court.
Ann B. Martin, C. U. Shreve, L. M. Shreve, and others filed their petition in equity in the Louisville Chancery Court, alleging that L. L. Shreve departed this life in the city of Louisville, leaving a last will and testament, by which he devised to the plaintiffs a large and valuable real estate in that city, comprised of city lots, and upon which had been erected, prior to his death, costly buildings and improvements; that the property is indivisible, and the aid of the chancellor is sought for the purpose of selling the same in order to a distribution of the proceeds according to the rights of the parties. It is also alleged that Michael Kean, who is made *288 a defendant to the action, owns an interest in what is known and called the Louisville Hotel property and the lots thereto belonging; and he, in reponse to the petition, discloses the extent of his interest, and unites with the plaintiffs (appellees) in their prayer for a sale of the hotel property, alleging that a sale of the whole of it will be advantageous to all the parties in interest.
A judgment was rendered directing a sale of this hotel property, in which the defendant Kean was jointly interested, and also a sale of other lots, specifically described in the petition, in which the plaintiffs alone had an interest. Under this judgment a sale was made by the marshal of the Louisville Chancery Court on the 19th of January, 1872, and the appellant J. C. Stump, being the highest and best bidder, purchased the Louisville Hotel property at the price of one hundred and ninety thousand and one hundred dollars, and the sale reported to the chancellor for his approval or rejection. In a few days after this sale was made an advance of ten per cent upon Stump’s bid was offered by Joseph A. Nunes, one of the attorneys for the appellees in the original petition, and a bond tendered by him, signed by four of the parties to the original action as his sureties, conditioned that he would comply with his offer, and a motion then made to open the biddings, etc. This motion was resisted by the purchaser Stump, and heard on the 12th of February following, resulting in sustaining the motion of the appellees and setting aside the sale; and from which Stump prosecutes this appeal.
H. C. Murrell was also a purchaser of a house and lot on Main Street, at this decretal sale, at the price of twenty-nine thousand dollars, and refusing to comply with the terms of sale by reason of various alleged informalities in the proceeding, a rule was awarded against him, the response to which was deemed insufficient, and he required to abide by his purchase; and from this order Murrell also prosecutes an appeal.
*289 The questions raised by the appellant Stump will be first considered. He insists that it was error in the court below to open the biddings merely because there was an advance of ten per cent on his bid, and the more so as it was the offer of those who were the owners of the property and at whose instance it was sold.
It is a fixed and well-recognized rule in reference to decretal sales in this state that a party purchasing at such sales becomes only an accepted bidder, and the completion of his purchase depends upon the judicial discretion of the chancellor when called upon to confirm it. The bidder, it is true, has the right to infer that if he is the highest and best bidder, and complies with the terms of sale, that the property purchased is his; but still he is required to know that the chancellor can exercise this judicial power over his offer, and may approve or reject it, and to deny him this right would be to leave the rights of- litigants unprotected in all such sales. The extent of this power vested in the chancellor over sales of real estate made by his commissioner, although well settled by the repeated adjudications of this court, seems not to have been recognized or followed in the practice established by many of the chancellors in this state. The practice in the English courts of chancery is to open the biddings and order a resale whenever an advance of ten per cent is offered with an indemnity to the purchaser by paying him his costs incurred by reason of his bidding, etc.
In this state this rule has never been adopted, and has certainly never been sanctioned by this court; but, on the contrary, such sales will not be disturbed for mere inadequacy of price unless there has been such a sacrifice of property as to import fraud. There must be either fraud or misconduct in some one connected with the sale, some surprise or misapprehension on the part of those interested, or of the officer who conducts the sale, or some irregularity in the proceedings or *290 other circumstances attending it, conducing to show unfairness, before the chancellor will refuse to confirm this act of his commissioner.
If the chancellor can exercise a mere arbitrary discretion, or has unlimited power over sales made in pursuance of his decrees, it would render unnecessary any advance upon the bidding to enable him to disregard the rights of the purchaser by setting aside the sale; and if the practice is tolerated in allowing the advance of ten per cent to be a sufficient reason for the exercise of this power, it might well be argued that it is proper to enlarge his discretion by enabling him to set aside all sales at his mere will and pleasure. It is the duty of the chancellor to look to the rights of parties litigant where property is placed under the control and custody of his commissioner by the judgment, and where there has been fraud, surprise, accident, etc., to disregard the acts of his agent by ordering a resale; but where there is an entire absence of all unfair dealing, and the sale has been conducted pursuant to the judgment, good faith requires that the rights of the purchaser as well as of the parties to the original proceeding should be protected. It would be trifling with the stability of judicial sales as well as the rights of purchasers to permit those who were present at the sale, or who ought to have been present, to interfere after the sale is made, and open the biddings for no other reason than that since the sale an advanced price has been offered for the property; and hence this court has always been unwilling to go so far in any case as to say that the chancellor has the power to set aside a sale made by his commissioner merely because he could get a better bargain.
In Forman & Dana v. Hunt (3 Dana, 621) the land sold for one tenth of its value; in Busey v. Hardin (2 B. Mon. 411) it sold for about one twelfth its value; in Dale v. Shirley (5 B. Mon.) two hundred acres of land sold for one hundred and thirty-seven dollars; in Egard v. Chearnly (1 Bush) the *291 land sold for eleven hundred dollars, and the subsequent offer was three thousand dollars. In all these cases, although the great inadequacy of. price constituted the principal objection to confirming the sales, still this court has been careful to look to other facts in connection with this great sacrifice of property, in order to relieve the debtors by setting aside the sale, and mere inadequacy of price was held insufficient for that purpose.
In the case of Lefevre v. Laraway (22 Barbour) the Supreme Court of New York held that the English rule to open the biddings, where an advance of ten per cent was made, did not prevail in that state, “ and that neither before nor after a confirmation of sale will a resale be ordered upon the offer of an increased price alone.” In the case cited the land sold for seven thousand dollars, and there was an advance of two thousand dollars on this bid. The judge said that as some of the owners of the tannery and land were infants, and it sold for greatly less than its value, in connection with the omission of the guardian ad litem to bid eight thousand dollars for the property, as authorized by Smith and Crow, he felt justified in ordering a resale for the benefit of the infant owners.
In the case of Tripp v. Cook (26 Wendell) it is said “that mere lowness of price ought not to furnish a sufficient reason to set aside sales, because if this were allowed a great inducement to bidders would be taken away, wealthy and sure bidders would be excluded, and the bidding left to those who took the chance of doubtful speculation.
Lord Eldon condemned the English rule on this subject, entertaining the opinion that every fair sale should be final, and in the case of Morin v. The Bishop of Durham (1 Ves., jr.) said “ that the only case in which biddings should be reopened was when there was some fraud or misconduct or negligence of which it would be against conscience that the purchaser should take advantage.
*292 In Williams on Real Property (ed. 1872, p. 164), when alluding to the English practice on this subject, it is said, “This practice always gave great dissatisfaction in England, and was finally abolished, and now the contract will be affirmed except in case of improper conduct in the management of the sale.”
Chancellor Kent, in Williamson v. Dale (3 Johnson’s Ch’y Rep. 290), uses this language: “ I do not lay any stress upon the alleged inadequacy of price, such a ground alone, unattended with other circumstances, is insufficient.”
In a careful examination of all the cases we have been able to find bearing upon this question, the courts have always refused to disturb the rights of purchasers acquired at a public sale, conducted fairly and as the judgment directed, upon a mere inadequacy of price.
Considerations of public policy demand that some confidence should be had in the stability of judicial sales, so as to invite competition in bidders by an assurance to men of fidelity and promptness in their business habits that the chancellor is at least bound by the same rules of fair dealing that such men are in their business transactions with each other; and although the practical experience of many able chancellors in the city of Louisville may demonstrate the wisdom of the English rule for that particular locality, still such a practice, although long indulged in, has never been sanctioned by this court, and can not now be permitted to vary a rule well established and always ■ recognized with reference to decretal sales. It must also be recollected that in most if not all the cases cited in regard to opening biddings the question presented arises between debtor and creditor, where courts are always inclined to relieve the debtor from his burden by enabling him to obtain the highest price for his property.
In the present case the appellees voluntarily seek the aid of the chancellor in enabling them to sell the whole of the *293 property, in which a lunatic and infant are interested, for the reason, as they allege, a sale of the tohole will redound to the interest of all. The sale was fair, open, and deliberate; the adult owners were men of fortune, present at the sale, and bid against the appellant for the property, who finally purchased it at one hundred and ninety thousand one hundred dollars. These appellees, the owners, now ask, for the reason alone that they are willing to take the property at an advance of ten per cent, to have the sale set aside and the property resold. They voluntarily placed this property upon the market. No creditor is demanding a sale at a sacrifice of this valuable estate; and if the chancellor would not relieve the debtor, upon what principle is he called upon to relieve the appellees? If the property had been sold under an ordinary execution for two thirds of its value, the absolute title would have passed to the purchaser; and still no such sacrifice is pretended to have been made in this case. That the debtor may derive a benefit merely from opening a sale has never been held a sufficient reason for that purpose, even where the rights of infants and married women were involved; and although courts of equity will exercise jurisdiction in such cases to relieve those laboring under disabilities when the same relief would be denied adults, still where there is no reservation in the judgment, and the price paid or offered is a fair price for the property, the chancellor will not and ought not to disturb the sale. Infants and married women are as much interested in maintaining judicial sales when fairly conducted as any other class of persons. It is their property that is oftenest sold; and when the purchaser is made to believe that he will hold the property by paying a fair price for it there will seldom be any cause to ask the chancellor for a resale by reason of a sacrifice of property. The petition alleges that the interests of all the married women except one has been purchased by the male adult owners of other interests, and the *294 loss to the infant and lunatic will not exceed one thousand dollars each. In a sale of such magnitude, where the purchaser has necessarily to obtain sureties willing to assume large risks, and so mold his pecuniary condition as to enable him to meet such a large indebtedness, we are well- satisfied he should not be disturbed in his purchase. The sale was conducted fairly; the price was no doubt the value of the property; and the purchaser being willing and able to comply with the terms of sale, the chancellor erred in opening the biddings.
Upon the appeal of Murrell it appears from the statements of the petition as to the condition of the property that it is indivisible, and it is also expressly alleged, first, that the Louisville Hotel property is indivisible, with the additional statement. that' the other lots ■ therein described can not be divided, and concluding with the general allegation “that a division of said property in kind among so many devisees in interest is impracticable.” These allegations, connected with the affidavits of two disinterested parties and the statements of all the adult owners, are deemed sufficient to authorize the chancellor to order the-sale and distribute the proceeds; that the word, heirs instead of devisees is used in the affidavits is deemed purely technical,- and no cause for excluding them as proof, nor was it necessary to have made any of the joint owners of the property defendants to the action. The guardians of- the infant or committee of the lunatic could have filed a petition and had their interests sold, and it was only intended that joint owners might be made defendants in the event of their refusal to unite in a sale of the property. Conceding that section 543 of the Civil Code applies to this case (Carpenter v. Strother’s heirs, 16 B. Mon. 290), it was not necessary that the husbands should have executed bond, or that the married women should have been privily examined as required by the provisions of chapter 86, Revised Statutes.
The act of March 2, 1863 (Myers’s Supplement, page 428), *295 provides “ that when the sale of land or slaves shall be necessary for a division between those entitled, the formalities required by subdivision 2, section 1, article 5, chapter 86 of the Revised Statutes shall be dispensed with; but the court may decree the sale, such married woman being before the court by the petition of her husband or next friend, or as an ordinary defendant.” This is a virtual repeal of chapter 86 of the Revised Statutes, so far as it applies to married women, in cases where the property sought to be sold, in which they have an interest, is indivisible. Nor is the act of March 2, 1863, affected by the provisions of the act of February 15, 1866. This last-named act is intended to apply to cases where the land is susceptible of division, but nevertheless authorizes a sale upon the allegation and proof that a division would materially impair its value, retaining, however, the right upon the part of any party in interest before the final hearing to appear and have his interest partitioned.
The act of 1863 is intended to apply alone to cases where no divison can be made, and in such cases neither the failure of the husband to give bond nor the married women to be privily examined can affect the validity of the sale. If so, this act can be rendered nugatory at the option of the wife or husband in any case where all the other parties jointly interested desire a sale. This act provides that a sale may be made of the wife’s interest upon the petition of the husband alone; and if the husband and wife had been made defendants, the chancellor, upon the proof in this case, should have directed a sale of the entire property, although they may have objected by answer — not so, however — under the provisions of the act of February, 1866. The chancellor under that act is required to have the interest of-a joint owner allotted to him, although it may impair the value of the remaining property, and for the reason alone that a division can be had; and this constitutes the difference between these two enactments.
*296 ■The proceeds of the sale of this real estate belong to the married women to the extent of their interests, and although their husbands have given no bond, it is the duty of the chancellor to know of them what disposition he is to make of it, and the order of his court should show the manner in which they (the married women) desire its application; nor will the money be paid over to the guardian or committee of the infant or lunatic until bond is executed as required by section 543 of the Civil Code.
In the case of Horsfall v. Ford (5 Bush, 643) there was no statutory guardian for the infant, nor was there any one appointed to take care of his interest, as provided by section 543 of the Civil Code, and the commissioners also reported that no division of the real estate could be made without great injury; thus bringing that case clearly within the provisions .of chapter 86, and of the act of February, 1866. The cases are not analogous, and the chancellor acted properly in requiring the appellant Murrell in the present case to comply with the terms of sale.
The judgment of the court below is reversed as to the appellant Stump, with directions to permit him to comply with the terms of sale; and is affirmed as to the appellant Murrell.