## Bethurum v. Baker, et al.

(Decided November 3, 1915.)

### Appeal from Rockcastle Circuit Court.

1. Judicial Sales—Sale by Master Commissioner—Discretion.—A master commissioner making a sale of land under a decree of court, has duties to perform as to the complainant, the vendor, the purchaser, and the court; and, in the performance of those duties, he must exercise his best judgment. He is necessarily invested with a reasonable discretion, in many respects, as to the manner of its exercise, taking care, however, to obey the decree so far as it has given him specific directions.

2. Judicial Sales—Failure to Bring Appraised Value—Resale.—Where a master commissioner selling land under a decree of court, knocked down the land to a bidder at $250.00, which was less than two-thirds of its appraised value, and with the purchaser's consent, again offered the land for sale, and knocked it down to

the same purchaser for $667.00, which was more than two-thirds of its appraised value, the sale will not be set aside upon the exception of the debtor.

BETHURUM & LEWIS for appellant.

C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.— Reversing.

On June 2, 1911, the appellees, W. H. Baker and wife, mortgaged their "Langford Tract," of fifteen acres, situated on Round Stone Creek, in Rockcastle County, to B. F. Hill to secure the payment of a note of even date therewith, for $424.00.

Hill assigned the note to the appellant Bethurum. Subsequently, on the 14th of September, 1911, Baker and wife mortgaged the "Langford Tract" and a house and lot on Main Street, in Mt. Vernon, known as the "Hotel Property," to Williams, Mullins & Richards, to secure three notes aggregating $2,250.00. By successive assignments, these last three notes became the property of the Peoples Bank of Mt. Vernon.

On April 18th, 1913, Bethurum instituted this action to enforce his mortgage lien upon the "Langford Tract;" and, on August 8th of the same year, the Peoples Bank instituted an action against Baker and wife to enforce its lien upon the "Langford Tract" and the "Hotel Property."

The two suits were consolidated and proceeded to a judgment on August 30th, 1913, enforcing the liens and directing a sale of the mortgaged property to pay the respective debts of the plaintiffs. The "Langford Tract" was appraised at $1,000.00

The judgment provided that in case Bethurum directed a sale, the commissioner should sell only the "Langford Tract," or so much thereof as was necessary to pay Bethurum's debt; and, any surplus remaining from the sale of that tract should be retained by the commissioner, subject to the order of the court.

Bethurum directed a sale; and, when Griffin, the master commissioner, after due advertisement, was preparing to cry the property, C. C. Williams, who had been Mrs. Baker's attorney in a divorce case, and was presumably acting for her, or for himself as assignor of the notes

then held by the Peoples Bank, stated to Griffin that he objected to his selling the "Langford Tract" first, because the judgment provided that the "Hotel Property" should first be sold, and, if it failed to bring enough to satisfy the indebtedness for which the mortgage was executed, then the "Langford Tract" should be sold.

Bethurum disputed the correctness of Williams' statement, and after some further disputation between Bethurum and Williams, Griffin proceeded with the sale of the "Langford Tract." Bethurum started the bidding with an offer of $250.00; and, there being no other bid, Griffin knocked down the property to Bethurum.

Immediately thereafter, and before the crowd had dispersed, Bethurum announced that he would waive any right he had under his bid, and told Griffin he might again offer the property for sale, and that he.would cause them no trouble about his bid of $250.00. Griffin again offered the property for sale, and Bethurum bid $667.00 therefor, and it was again knocked down to him. Bethurum complied with the terms of sale by giving bond, and the commissioner so reported it to the court.

The defendant W. H. Baker excepted to the report, because the commissioner sold the "Langford Tract" for a sum less than two-thirds of its appraised value, thereby saving to the defendants a right of redemption; but that after the land had been sold for less than two-thirds of its appraised value, the commissioner, without right, and without an order of court, resold said tract for $667.00, which was more than two-thirds of its appraised value, thereby attempting to deprive the defendant of his right to redeem said land. The court sustained the exception, and from a judgment setting aside the sale. Bethurum prosecutes this appeal.

Under section 1684 of the Kentucky Statutes, if property be sold at a judicial sale for less than two-thirds of its appraised value, the owner has the right to redeem it within one year thereafter, by repaying to the purchaser the original purchase money with ten per cent. interest thereon. This exception presents only one question for determination upon this appeal, viz.: Did the commissioner.have the right to make the second sale?

The court's power to set aside a judicial sale and order another sale, is not an arbitrary power. It can only be exercised for cause showing such irregularities in the proceedings, or such misconduct on the part of

persons interested, or officious intermeddlers, as presumably interfered with the property bringing its reasonable value. But the court must regard the rights of all the parties, including the purchaser, and exercise a legal discretion as to rejecting or confirming sales. Hughes v. Swope, 88 Ky., 258; Head v. Clark, 88 Ky., 364.

In Head v. Clark, *supra,* in speaking of the commissioner and his duties, the court said:

"If it be conceded, however, that, in the case of an ordinary sale by auction, the power of the auctioneer is at an end the moment the hammer falls, and that the contract of purchase is then closed, no matter what mistakes he may have committed, or what misunderstanding may have existed upon his part as to the bidding, yet we are unwilling to say that this is true as to a decretal sale attended by circumstances similar to those now under consideration. In an ordinary sale by auction, the auctioneer is the agent of the seller only, until the sale is made, when, for certain purposes, he becomes the agent of both parties.

"A commissioner, acting under a decree, has, however, duties to perform as to the complainant, the vendor, the purchaser and the court; and in the performance of those duties he must exercise his best judgment. He is necessarily invested with a reasonable discretion, in many respects, as to the manner of its exercise, taking care, however, to obey the decree so far as it has given him specific directions. In acting under it, he should adopt all proper means to fulfill its directions; and in doing so, he is, unless restricted by its terms, or the general law, to exercise a sound discretion. He may, for good reason, decline to sell at the time advertised. If there be but one person present, or, by reason of sham bidding, a sacrifice of the property is reasonably certain to occur, he may refuse to proceed.

"It was said by the Supreme Court of the United States in Blossom v. Railroad Company, 3 Wall, p. 209, that he might 'be justified in postponing the sale to a future day to prevent the sacrifice of the property. Every such officer has a right to exercise a reasonable discretion to adjourn such a sale, and all that can be required of him is, that he should have proper qualifications, use due diligence in ascertaining the circumstances, and act in good faith and with an honest intention to perform his duty.'

"Undoubtedly a sheriff in selling under execution may exercise his discretion in the respects to which we have alluded, and we see no reason why a commissioner in selling property under decree should not have the same right. The fact that his action is not final until approved by the court does not present a sufficient reason for a distinction."

In Swafford v. Howard, 20 Ky. L. R., 1794, the purchaser did not execute bond for the purchase money at the conclusion of the sale, whereupon the commissioner resold the property.

In approving his action, the court said:

"Frederick did not execute bond for the purchase money and the commissioner had the right to use his discretion as to whether or not he would resell it, and it does not appear that he abused the discretion which he had the right to exercise. Head v. Clark, 88 Ky., 362; Wilson v. Thorne & Co., 11 Ky. L. R., 945; Hughes v. Swope, 88 Ky., 254."

In 24 Cyc., 46, it is said:

"If the purchaser, at once upon the property being struck off to him, wrongfully refuses to comply with the terms of the sale, the officer may offer the property for sale again without an order for the resale."

If a commissioner has the right to make a new sale in case the purchaser fails to comply with his bid at the first sale, we see no reason why the commissioner may not resell the property, with the consent of the purchaser at the first sale. Of course, he could not release the purchaser under the first sale if, by doing so, he would affect the rights of any interested party. Appellees' exception, however, is based upon the idea that the commissioner was representing the defendant only when he made the sale, while, in fact, the sale was made at the direction of appellant, and for the purpose of preserving his rights under the judgment.

Moreover, it was to the interest of every one concerned that the property should bring the highest price possible, and the fact that the property brought more than two-thirds of its appraised value at the second sale, and thereby barred appellees' right of redemption, cannot affect the rights of any of the parties. There is proof to the effect that the wrangle between Bethurum and Williams before the sale deterred other persons from bid-

ding, and thereby letting the property go at the nominal price of $250.00.

Appellant recognized that fact and promptly notified the commissioner that his bid need not stand in the way of a higher bid. If the tract had been sold under the bid of $250.00, there can be little doubt that, in view of the controversy between appellant and Williams, and the consequent low price, the sale would have been set aside, upon exception taken thereto, and a resale ordered. That has been accomplished to the benefit of all concerned by the second sale at more than double the bid at the first sale.

If Bethurum's first bid of $250.00 had prevailed, and the property had been sold to him for that sum instead of for $667.00, as was done under the second sale, the difference of $417.00 would have been thrown upon the "Hotel Property." Furthermore, if the first bid of $250.00 had been accepted, the appellees' right of redemption in the "Langford Tract" could have been sold to pay the unpaid balance of appellant's debt.

It would seem, therefore, under any view of the case, that it was to the interest of both Baker and his creditors that his property should bring the higher rather than the lower price. The usual complaint is that the debtor's property sells for too small a sum.

We are of opinion the chancellor was in error when he set aside the second sale.

Judgment reversed, with instructions to the circuit court to set aside the judgment appealed from, and to confirm the sale of the "Langford Tract" to the appellant.