## Baker, et al. v. Weaks, et al.

(Decided December 21, 1917.)

## Appeal from McCracken Circuit Court.

1. Infants—Action by Guardian for Sale of Land.—An infant may sue for the sale of lands owned by him, jointly with others, under Section 490, Civil Code, by his guardian, and if, at the time the suit is instituted, the guardian has been duly appointed and qualified, a judgment for the sale of the lands is not void, although the record evidence of the guardian's appointment and qualification is not on file at the time of the rendition of the judgment, as the infant is before the court, and the court has jurisdiction of him, if the pleadings make the proper averments, as to the authority of the guardian.

2. Infants—Sale of Infant's Lands—Deed to Purchaser.—A purchaser, at a sale of an infant's lands, under Section 490, Civil Code, where the infant sued by his guardian, can not be required to accept a deed and pay for the property, until it is made to appear upon the record, that the guardian has been duly appointed and qualified.

3. Infants—Sale of Real Property—Judge Ordering Sale Cannot Become Purchaser.—A judge of a court, who has the ordering, conducting, or confirming the sale of an infant's real property, is a trustee for the infant, and can not become the purchaser of the property at the sale, and, if he does so, the sale will be void and will be set aside upon exceptions by the infant or his proper representative.

D. G. PARKS for appellants.

ARTHUR Y. MARTIN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

W. B. Weaks and J. P. Weaks, both of whom are now dead, were joint owners of each of seven lots, in the city of Paducah. The lots adjoined and were unimproved. Six of the lots are each fifty feet in width, while the other one is fifty-two feet, and each has a depth of one hundred and fifty-two feet. It does not certainly appear, that the lots have a frontage on any established street, but, at one end, they approach an alleyway. At the death of W. B. Weaks, his interest in the lands was inherited by his children, Cornelia E. Weaks and William W. Weaks, subject to a right of dower of their mother, Willie W. Weaks. At the death of J. P. Weaks, his interest in the lots was inherited by his children, Mable C. Weaks, Marie Antoinette Weaks, and Beulah Weaks, subject

to a right of dower in their mother, Nettie L. Weaks, who has since intermarried with H. E. Doss. Mabel C. Weaks is an adult, but Marie Antoinette, Beulah, Cornelia E. and William C. Weaks are infants. This action was instituted by Mabel C. Weaks, William C. Weaks, and Nettie L. Doss, in their own right, and by Cornelia E. and William C. Weaks, by their statutory guardian, Willie W. Weaks, and by Marie Antoinette and Beulah Weaks, by their statutory guardian, Nettie L. Doss, for a sale of each of the lots and a division of the proceeds, upon the ground, that the lots were not susceptible of division between the owners, and an allotment, to each, of his portion in severalty, without materially impairing the value of the lots and of each interest therein. The proceeding was under section 490, of the Civil Code. Willie W. Weaks and Nettie L. Doss each consented to the sale and agreed to accept the value of their respective dowers, in money, out of the proceeds of the sale, in lieu of an allotment of dower in the realty. The infants, Cornelia E. and William C. Weaks, reside in the state of Kentucky, but the other infant plaintiffs, Mary Antoinette and Beulah Weaks, reside in the state of Tennessee.

The proceeding was *ex parte,* but the petition, in substance, averred, that Willie W. Weaks, had been duly appointed and qualified as the statutory guardian of Cornelia E. and William C. Weaks, by and in the county court of Christian county, Kentucky, which county was alleged to be that of their residence, and a certified copy, of the orders of that court, showing the appointment and qualification, was filed with the petition. It was, also, averred, that Nettie L. Doss was the duly qualified and acting guardian of Marie Antoinette and Beulah Weaks; that she had been appointed such by the county court of Wilson county, in the state of Tennessee, wherein they resided, and had duly qualified in that court, and that she had, upon a petition to the county court of McCracken county, Kentucky, wherein the lots are situated, been authorized, by an order of that court, to prosecute this action as the guardian of Marie Antoinette and Beulah Weaks, under the appointment of the county court in Tennessee. The title papers, under which the property was held by the ancestors of the petitioners, were filed with the petition. A copy of the records of the county court, in Tennessee, showing the appointment and qualification of Nettie L. Doss, as the guardian of Marie

Antoinette and Beulah Weaks, was filed before the submission of the action, and the correctness of the validity of it was certified by the clerk of that county court, with its seal attached, but was not certified, as required by the Federal law, nor as required by the statutes of this state, so as to authorize a court of this state to consider it as evidence of the truth of the facts therein stated. Section 1635, Kentucky Statutes; Williams v. Duncan, 92 Ky. 125. A copy of the judgment of the McCracken county court, which the petition alleged existed, and which authorized Nettie L. Doss to institute and prosecute this action, as guardian, by appointment of the county court in Tennessee, as provided by section 2041, Kentucky Statutes, was not filed. Evidence was taken tending to prove that the lots were not divisible without impairment of their value, and of the respective interests therein. In this state of the record, the action was submitted and a judgment rendered in accordance with the prayer of the petition, decreeing a sale of the lots, separately, and then a sale of them as a whole, and directing the commissioner to accept and report the bid from which would be realized the largest sum of money. Before the sale, the commissioner caused the lots to be appraised, and the appraisers fixed their value, as a whole, at the sum of $2,000.00. A sale was regularly made and the appellants became the purchasers of all of the lots sold together, as a whole, for the sum of $1,825.00. The sale was regularly reported and the appellees, who are the plaintiffs below, filed exceptions to the report of sale and it is from the judgment sustaining two of the exceptions and setting aside the sale, that this appeal is prosecuted.

(1) The court adjudged, that the sale be set aside and vacated upon two grounds, one of which was, that the judgment directing the sale was void, because the court, at the time the judgment was rendered, did not have jurisdiction of the infants, Marie Antoinette and Beulah Weaks, nor of their guardian, by whom the two infants were prosecuting their suit, as there was no competent evidence, on file at the rendition of the judgment, showing that the guardian had been duly appointed and qualified, or had been authorized by a court in this state to prosecute the action, as provided by section 2041, Kentucky Statutes, *supra*. Of course, if the court, which renders a judgment, is without jurisdiction to do so, the judgment and all proceedings under it are void. However, pending the exceptions, the appellants, who were the

purchasers at the sale, filed in the case, a properly certified copy of the order of the county court in Tennessee, and, also, of the judgment of the McCracken county court, in Kentucky, which authorized Nettie L. Doss, as guardian under the appointment by the Tennessee court, to act as guardian for her wards in this state. These existed and were in full force and effect, when the action was instituted. This is an action, which can be instituted and prosecuted by an infant, by his guardian, when the guardian is legally authorized to act for him. The authority, without doubt, existed, in the instant case. Section 2041, Kentucky Statutes; section 35, subsection 4, Civil Code; Shelby v. Harrison, 84 Ky. 144; Bell v. Clark, 2 Met. 573; Williams v. Duncan, 92 Ky. 125; Watts v. Wilson, 93 Ky. 495; Wooldridge v. Wooldridge, 26 R. 97. In Shelby v. Harrison, *supra*, which was a suit under section 490, Civil Code, the guardian, who owed his appointment to a court in Illinois, where he and his wards resided, entered their appearance and joined in the prayer for the sale of the lands, and alleged, that he had been authorized by the county court in the county where the lands were situated, in Kentucky, to act as guardian, under his foreign appointment. The purchasers at the sale of the land were the exceptors. This court said:

"It is substantially stated in the petition and answer that Carter H. Harrison, the father of the two infant defendants, was, under the laws of the state of Illinois, appointed and qualified as their guardian; and although the proper record evidence of his appointment and qualification was not filed, in this case, until after the sale of the property to appellants, still the fact being established, the defect in their title, which might otherwise have existed, has been to that extent cured, and they have now no right to complain on that account."

In Henning v. Barringer, 10 R. 674, the mother was statutory guardian of all her children, except one, and sued, alleging that she was the guardian of all, and, also, as their next friend, but failed to file the affidavit required by section 37, Civil Code, which is required to be done, where one sues as a next friend. After the sale, but before confirmation of it, she was appointed statutory guardian for the one for which she had not been theretofore appointed. The purchasers of the land were exceptors to the report of the sale, upon the ground that the above irregularities made the title, they would receive, defective. The court, after saying, that, if all the parties were before the court, the title was good, added:

"They were all before the court, because in this particular state of case, an infant may bring the suit for the sale, and, under the code, can sue by his guardian or next friend, and that he sued both by his guardian and next friend would only be the subject of special demurrer, and could afford them no ground for reversal, unless it appeared that the rights of the infant had been prejudiced by the proceedings."

Referring to the failure to file the affidavit, as a ground for claiming that the mother had no right to sue, the court said:

"The affidavit is to the effect that there is no guardian —no one else to sue—but in this particular, when the fact is made to appear of the right to sue, before the purchaser acquires the title, it is not a jurisdictional fact, such as would destroy the judgment and render it void, but would be held bad on demurrer at the instance of the parties to the action."

The right of the two infant wards of Nettie L. Doss existed in this action to sue by her as their statutory guardian, when the action was instituted, and hence the infants, as well as the guardian, were before the court upon their petition, and the judgment was not void. When, before the sale was confirmed, the necessary evidences were filed to assure the purchaser a good title, under the above mentioned cases, the court was in error, in holding, that the judgment for the sale of the lands was void, and an exception based upon that ground should have been overruled. Webb, et al. v. Webb's Guardian, 177 Ky. 152. It should be added, that a purchaser, at a sale of infant's real estate, can not be required to accept a deed and pay the price until the evidences, of the right of the guardian to institute and maintain the suit, appear in the record, but where the right of the guardian to maintain the suit existed, and before the confirmation of the sale the proper evidences of such right appeared in the record, the purchaser cannot complain. There does not appear to be any good reason why the guardian and his wards should complain of a judgment of the court, which they have sought, when the right of the guardian to maintain the action existed, and before a sale of the property is confirmed, the evidences of such right appear in the record, and the nature of the proceeding is such as to give the court jurisdiction of the parties preceding the rendition of the judgment.

(2) The other ground, upon which the circuit court set aside the sale, was, that the regular judge of the circuit court, who rendered the judgment decreeing a sale of the lots, was a joint purchaser of them at the sale, and for such reason, the sale was invalid. It appears from the proceedings, that the judge, after he was reported to the court as one of the purchasers, declined to further preside in the action, and a special judge was agreed upon by him and his joint purchaser upon one side and the petitioners upon the other, to hear and determine the exceptions to the report of sale, and to make the necessary further orders in the action. For the first time, in this jurisdiction, the question is presented for determination, as to what effect, upon the validity of a decretal judicial sale of an infant's real property, will be exerted by the fact, that the judge, who ordered the sale, became the purchaser of the property, when it was sold by the commissioner of the court, who is the agent of the court in effecting the sale. It is due to say, before entering upon a discussion of this question, that the judge, who made the purchase, in the instant case, is of distinguished character and ability, and there is no ground, as appears from the record, to infer, that in rendering the judgment for the sale of the property, that he was actuated by any motive, other than a disinterested performance of a duty, or that he then had any purpose or design to become a purchaser of the property, and though he was the actual bidder at the sale for himself and his co-appellant, his conduct did not evince any purpose to use his position, as a high judicial officer, for a personal advantage, nor did there appear upon his part any disposition to be other than fair toward other bidders and persons, who might be bidders. Hence, the only question here is: If a judge, who, in the court over which he presides, orders the sale of infant's real property, by the commissioner of the court, and then becomes the purchaser at the sale, will the sale be valid?

In 24 Cyc. 29, the general rule is declared to be as follows:

"No person can become a purchaser at a judicial sale, who has a duty to perform in reference thereto, which is inconsistent with the character of a purchaser, or who is so connected with the sale, that his individual interest, as a purchaser, might be inconsistent with his duty. Thus, the person who makes a judicial sale may not become the purchaser, either directly or indirectly. Neither

can the judge, who ordered the sale, become the purchaser or be interested as a purchaser; . . ."

In 16 R. C. L. 107, the rule is declared to be as follows:

"A judge of a court having some duty to perform in ordering, conducting or confirming a judicial sale therein, the performance of which may conflict with the interests acquired by a purchaser at the sale, occupies a position of a trustee, and a purchase by him is assailable, as in the case of any other trustee."

The principle, upon which the above doctrine is asserted, is, that the judge, who orders, conducts or confirms a judicial sale, is an agent designated by law, or in other words a trustee, for the purpose of effecting the sale of an infant's real estate, and when the general doctrine of agency or trusteeship is applied to him, that it renders him incapable of purchasing the property, which is by law confided to his discretion as to whether a sale of it shall be made; and this principle applies to an agent of any kind, because the doctrine is universal, that an agent for the sale of his principal's property cannot sell it to himself. Where an agency is created by law for the sale of the property of those, who are incapable of giving consent or contracting sales, or where the property is to be sold without the consent of the owner, the agents, whom the law designates to perform the duties of making such sales, cannot be purchasers at such sales. Trustees, who make sales of trust estates, cannot be purchasers, except for the benefit of the *cestui que trustent* or else for the protection of themselves. Guardians, who make sales of their ward's estates, administrators and executors, who make sales of decedent's estates, likewise, fall under the inhibition of this rule. This rule is founded more upon general principles than upon the circumstances of any particular case, and as said in Stapp v. Toler, 3 Bibb 450, the doctrine "rests upon this, that the purchase is not permitted, in any case, however honest the circumstances, the general interest of justice requiring it to be destroyed, in every instance, as no court is competent to the examination and ascertainment of the truth in much the greater number of cases." The courts are the agencies provided by law for the sales of real property, the owners of which, from infancy or infirmity of mind, are incapable of making contracts for sales for themselves, and they are, also, the agents provided by law for enforced sales of property of debtors in satis-

faction of claims of creditors. One class of sales is made under judicial decrees, by commissioners of the court. Another class of sales is made by executive officers, under writs of execution issued by virtue of judgments rendered by the court. Sheriffs and other executive officers, who make sales under execution, as well as those officers who collect the revenues by distraint, cannot become purchasers at the sales made by them. Stapp v. Toler, *supra;* Smith v. Pope's Heirs, 5 B. M. 337; Devers v. Dallam, etc., 6 T. B. M. 102. In the instant case, however, the discussion of this question will be confined to sales made under judicial decrees, by a commissioner, as the organ of the court, as in the instant case. The courts have sternly refused to allow their commissioners, who are the mere agents of the court, to carry into effect the orders made by the judges of the courts, to become purchasers, at judicial sales, made by the commissioners. In Price's Admr. v. Thompson, 84 Ky. 219, the commissioner of the court made a purchase of lands, which the court had ordered to be sold, and in declaring the sale to be void, the court used this language:

"Officers, whose powers are not merely persuasive, but coercive, *ex parte* and arbitrary, should be held to strict impartiality, fidelity and integrity in the discharge of their trust. All temptation to make private gain or to take unfair advantage, directly or indirectly, should be removed. The most effectual way to do so is to declare all such transactions conclusively invalid."

In Bagby v. Eversole, 6 R. 365, it was said:

"A commissioner in chancery cannot become a purchaser at his own sale or reap any benefit from a purchase by another, under an agreement that he is to be regarded as a joint purchaser. Such contracts are against public policy."

To the same effect is Penn. v. Rhoads, etc., 124 Ky. 798; Sears v. Collie, 148 Ky. 144; 24 Cyc. 29. All such purchases are at least voidable and will be set aside upon exceptions. It is true, that this court has made a distinction between a purchase, at a judicial sale, by the commissioner, who makes the sale and, a purchase by an appraiser of the property at such sale, who may be, in a way, considered one of the agents in effecting a judicial sale. It was held in Barlow v. McClintock, 10 R. 894, and in Ison v. Kinnaird, 13 R. 569, that an appraiser, at a judicial sale, might become a purchaser, and the sale would not be vacated, unless it could be shown by evi-

dence, that the appraiser intended to become a purchaser before or while engaged in his duties as an appraiser, thus making the validity of the purchase, by an appraiser, depend upon the fact of his having been actually fraudulent in the performance of his duties, while the rule, as applied to a purchase by a commissioner, making the sale, directly or indirectly, does not depend for its validity upon the ability of the parties to show any fraudulent conduct of the commissioner, but the sale is held invalid, because of the office which he holds, and no investigation is necessary to be made into the circumstances of the sale. In the two cases, *supra,* the purchase by the appraiser was upheld, as the property, in neither instance, sold for as much as the appraisement, and the facts also demonstrated that the property had sold for its fair value. The reason for the distinction made between a sale to an appraiser and a sale by the commissioner to himself or to some one for his benefit, arises, doubtless, from the difference in the duties of the appraiser and commissioner, as the appraisement would not have any effect upon the price of the property, if the sale was fairly made; and the only evil influence, which an interested and designing appraiser could exert, would be to fix the value of the property, by the appraisement, at a sum lower than its value, and thus probably deprive the owner of his equity of redemption, and besides, the appraiser has no duty to perform in ordering, or ratifying the sale, nor in its conduct, except to make the appraisement.

Thus, it appears, that if, in the instant case, the commissioner, who merely executed the judgment, as the agent of the court, had, either directly or indirectly, become the purchaser of the lands, there would be no difficulty in holding, either upon principle or according to precedent, that the exceptions to the sale on account of his purchase should be sustained, but, it is contended, that, if the judge of the court, who made and caused to be entered the judgment, under which the commissioner acted, should become the purchaser, at the sale, under the judgment, his purchase should be sustained, when it should be ratified by some other judge than himself. The adjudications, in other jurisdictions, growing out of the purchase, at judicial sales, by the judge, who made the decree, have been instances, in which the judge was the purchaser, in person or through some other person, and thereafter confirmed the report of sale, and sales under

these circumstances have been uniformly held to be void or voidable. It does not seem, that any one would controvert the conclusion, in these cases. Such are the cases of Hoskinson v. Jaquess, 54 Ill. App. 59; Livingston v. Cochran, 33 Ark. 294; Tracy v. Colby, 55 Cal. 67; Scott v. Calvit, 2 La. 69. The above cases are decided upon the principle, that the judge was a trustee for the parties to the suit, and that when he became a purchaser, his interest, as purchaser, was antagonistic to his duties, as an agent or trustee, and when he confirmed the sale, that he was, furthermore, sitting as a judge in his own cause, and the argument is made, in the instant case, to distinguish it from cases similar to the ones above cited, that the judge, who makes a purchase at a decretal sale, where the order for the sale was rendered by him, and the confirmation of the sale is made by another, that he thereby does not become a judge in his own cause, and the reason ceases for holding that he cannot become a purchaser. If, however, he should contemplate becoming a purchaser, before or at the time he enters the decree for the sale, it would be impossible for the parties to establish such fact, by evidence, and the vice will be as great as when a judge actually sits in his own cause, as the interest, with which he would be invested, as a prospective purchaser of the property, would be antagonistic to the duties incumbent upon him as a trustee for the owner of the property. In Livingston v. Cochran, *supra*, the court said:

"A probate judge should not be permitted to purchase lands at a sale ordered by himself, for he might be tempted to order a sale to the prejudice of the persons interested in the estate."

In Walton, et al., v. Terry, et al., Harr (Mich.) 259, a judge made an order for a sale of infants' property by their guardian, and then became interested as a purchaser through another. The sale was held to be void, and in discussing the ground upon which the decision was rested, the court said:

"It is placed upon the ground of the disability to purchase, arising from the office which the purchaser held. And the case quoted by Chancellor Kent, on that occasion, extends the disability to guardians, judicial officers, and all other persons, who, in any respect, as agents, had a concern in the disposition and sale of the property of others, whether the sale was public or private, judicial or otherwise."

The case referred to was that of Devau v. Fanning, 2 Johns Ch. R. 268. In Texas it is held that a purchase made by a judge, at a sale ordered by him, is void. Frieburg v. Isbell, 25 S. W. 988; Halsey v. Jones, 25 S. W. 967; Nona Mills Co. v. Wingate, 113 S. W. 182. The case of Thompson v. Buffalo Land & Coal Co., 88 S. E. 1040, does not militate against the views herein expressed. It will be observed, that the courts in Texas and Michigan and probably others, hold that a purchase made by a judge under a decree rendered by him is void, and the same contention was made in the case, *supra,* which was determined in the Supreme Court of West Virginia. In that case, the purchaser at the sale was the judge, who rendered the judgment for the sale, and the confirmation was by another judge. The sale had been confirmed and deed made. It is held in that jurisdiction, that a decision rendered by an interested judge is not void, but only voidable, and that a sale made to a party to a suit, who does not move the decree, cannot be set aside for an error, which is not jurisdictional, and hence, the court determined that the sale, in that case, was not void, but was only voidable, and it would seem that it is the better doctrine, that a purchase at a judicial sale, made by a person who is incapable of making the purchase, by law, is not void, but voidable. 24 Cyc. 30; Sears v. Collie, *supra.*

The circuit court, as above stated, is the agency provided by law, in which the necessary proceedings must be had and steps taken to effectuate the sale of infant's real estate; the judge of the court is the person designated by law to order such a sale, and to have supervision over its conduct and confirmation; it is his duty to see that the interests of the infants are safeguarded and protected; the sales in such cases are made by the court and its commissioner is its organ for that purpose, and the personnel of the commissioner is designated by the judge of the court; the bids are propositions for a purchase made to the court; the judge is the judicial officer of the court and is invested with the duties of a trustee in relation to the interests of the infants, and, although he declines to preside upon the motion to confirm the sale made to him, under a decree rendered by him, he, at least, has had the ordering of the sale and is so connected with the sale, that his individual interest, as a purchaser, would be inconsistent with his duties, or might be so, and in such states of case the sale would be declared

invalid, without reference to the particular facts and circumstances of the case, upon the application of interested parties.

The judgment is therefore affirmed.