## Jones v. Deposit & People's Bank, et al.

(Decided May 3, 1918.)

### Appeal from Bourbon Circuit Court.

1. Judicial Sales—Inadequacy of Price.—Inadequacy of price standing alone, is not a sufficient ground for setting aside a judicial sale, unless the inadequacy is so great as in itself to raise the presumption of fraud, or to shock the conscience of the court; but when in connection with inadequacy of price there are other circumstances having a tendency to cause such inadequacy, or any apparent unfairness or impropriety, the sale may be set aside, although such additional circumstances are slight, and if unaccompanied by inadequacy of price would not furnish sufficient ground for vacating the sale.

2. Judicial Sales—Call in Description Omitted—Correction.—Where a call in the description of land sold at judicial sale was omitted from the judgment, making it thus to appear that the tract sold contained more land than was actually sold, and the error was subsequently corrected with the consent of the purchaser, the sale will not be set aside upon the motion of the defendant debtor.

3. Judicial Sales—Call in Description Omitted.—Where the advertisement of a judicial sale conducted by the commissioner of the court omitted one of the calls in the description of the land sold which was not discovered until after the sale, and no one

was misled thereby, the sale will not be set aside upon the exceptions of the defendant debtor.

4. Judicial Sales—Refusal to Postpone Sale—Exceptions.—The fact that strangers to the action circulated a rumor that a judicial sale would not be held at the time stated in the advertisements did not justify the commissioner in postponing the sale, and his action in conducting the sale as advertised is no ground for exception by the defendant debtor.

5. Judicial Sales—Person With Duty to Perform at Cannot be Purchaser.—The general rule is that no person can become a purchaser at a judicial sale who has a duty to perform in reference thereto which is inconsistent with the character of purchaser, or who is so connected with the sale that his individual interest as a purchaser might be inconsistent with his duty.

6. Judicial Sales—Purchase by Appraiser.—The rule that no one can become a purchaser at a judicial sale who has a duty to perform in reference thereto which is inconsistent with the character of purchaser, or who is so connected with the sale that his individual interest as a purchaser might be inconsistent with his duty, does not apply, in all of its strictness, to an appraiser who becomes a purchaser at the sale in which he had acted as appraiser.

7. Judicial Sales—Purchase by Appraiser.—An appraiser may become a purchaser at a judicial sale unless he made the appraisement with a view of becoming a purchaser, and the appraisement was influenced by the appraiser's purpose to purchase the land, at the time he made the appraisement, thus making the validity of the purchase by the appraiser depend upon the fact of his being actually fraudulent in the performance of his duties; and unless these facts are made to appear, the sale to an appraiser will not be set aside.

8. Judicial Sales—Power of Court to Set Aside.—The court's power to set aside a judicial sale and order another sale is not an arbitrary power; it can only be exercised for cause showing such irregularities in the proceedings, or such misconduct on the part of persons interested, or officious intermeddlers as presumably interfered with the property bringing its reasonable value.

9. Judicial Sales—Policy of Law to Sustain.—It is the policy of the law to sustain judicial sales, and to encourage bidding by all persons, in order that the property may not be sacrificed.

TALBOT & WHITLEY for appellant.

JOHN J. WILLIAMS for appellees.

Opinion of the Court by Judge Miller—Affirming.

Jones mortgaged several tracts of land to the Deposit & People's Bank to secure an indebtedness of about $9,800.00; and having failed to pay the debt upon its maturity the bank instituted this action to enforce its lien.

The action proceeded to a judgment entered on June 30, 1915, directing the master commissioner to sell so much of the land as would be necessary to satisfy the plaintiff's debt. The judgment directing the sale followed the description of the land as given in the mortgage and in the petition.

The master advertised the sale in newspapers and by posters as required by law, describing the property to be sold as it was described in the judgment, and caused it to be appraised by Lilleston and McClintock. After the appraisement had been made, based upon the description as given in the judgment, and before the sale was made, Jones presented to the master a written statement requesting him to sell certain portions of the land in the order and in the manner designated in the request. The master granted Jones' request; caused the property to be again appraised by Lilleston and McClintock, according to the subdivision as requested by Jones; and made the sale accordingly on August 2, 1915.

Of the sixteen lots thus sold Lilleston, the appraiser, and his partner Miller, doing business as Miller & Lilleston, bought lot No. 6, for $425.00; the cottage lot for $500.00; eight small vacant lots at $47.50 each; and a large vacant lot on Main street (immediately in the rear of the eight vacant lots) for $1,175.00. Caywood and Clark bought the lumberyard tract for $800.00; and Geo. W. Wilder bought lot No. 1, for $165.00, and lot No. 2, for $150.00. Harris and Speakes bought lot No. 10, for $85.00; W. P. Chappell bought the remaining lots in the square for $2,725.00; and John S. Jones, the defendant, bought the remaining 70 acres for $5,600.00.

Jones filed exceptions to the sale of the lumberyard to Caywood and Clark; to the sale to Harris and Speakes of lot No. 10, for $85.00; and to the sales to Miller and Lilleston of the cottage lot for $500.00, and the eight small vacant lots at $47.50 each. No exceptions were taken to the sale to Chappell, or to either of the sales to Wilder, or to the sales made to the plaintiff Jones. Neither was there any exception taken to the sale of the large vacant Main street lot to Miller and Lilleston for $1,175.00, nor to the sale of lot No. 6, to Miller and Lilleston for $425.00. It will thus be observed that no exceptions are taken to the purchases by Chappell, Wilder, or the appellant Jones or to two of the purchases by Miller and Lilleston.

The grounds of exception are four; (1) a vacant lot not embraced in the judgment was sold as a part of division No. 4; (2) the sale was not properly advertised; (3) because of rumors afloat that there would be no sale of the property at the time it was advertised to be sold; and, (4) the appraisement was illegal because Lilleston, one of the appraisers, was not a disinterested person. And, while it is not relied upon as an independent ground for setting aside the sales, the alleged inadequacy of the purchase price is urged in aid of the principal grounds. The chancellor overruled the exceptions; confirmed the sale; and Jones appeals.

The ancillary ground based upon the inadequacy of the purchase price is without merit. The rule is that inadequacy of price, standing alone, is not a sufficient ground for setting aside a judicial sale, unless the inadequacy is so great as in itself to raise a presumption of fraud, or to shock the conscience of the court; but when in connection with the inadequacy of price there are other circumstances having a tendency to cause such inadequacy, or any apparent unfairness or impropriety, the sale may be set aside, although such additional circumstances are slight and, if unaccompanied by inadequacy of price would not furnish sufficient ground for vacating the sale. 24 Cyc. 39; Stump v. Martin, 9 Bush 290; Shuck v. Price, 22 Ky. L. R. 1261, 60 S. W. 487.

But the proof fails to show that the prices brought at this sale were inadequate in the sense of the rule above laid down. The lumberyard bought by Caywood and Clark for $800.00, was appraised at $1,000.00. The cottage property bought by Miller and Lilleston for $500.00, was appraised at that sum; while the lot bought by Harris and Speakes for $85.00, was appraised at $70.00.

The only remaining sales excepted to relate to the eight small lots each having a front of 45 feet and sold for $47.50. They were appraised at $70.00, but the proof is satisfactory that they brought their fair value at the time of the sale. They are undesirable lots, poorly located, and fronting upon an unmade rear street. No one has offered to give more for them in case they should be resold. On the contrary Lilleston testified that he paid more for them than they were really worth because, having bought the large tract immediately in front of them and fronting upon Main street, he could advantageously use these small lots in connection with the larger tract. For that reason they were worth more to him than other

bidders were willing to give. We conclude therefore that this ground is not supported by the proof; and the principal grounds relied upon by Jones must, therefore, stand upon their merits unassisted by the allegation that the purchase price of the several lots was inadequate.

1. The contention that land not embraced in the judgment was sold as part of division No. 4, is without merit. One of the calls of the description of the lumber-yard tract that was sold to Caywood and Clark for $800.00, was omitted in the advertisements, thus making it appear that the tract contained more than was sold. But by an order of court dated July 1, 1916, this error, with the consent of the purchasers, was corrected without objection upon the part of Jones. The only effect the omission in the description could have had upon the sale would have been to enhance the purchase price by reason of the enlarged boundary; but of this the purchasers are not complaining, and Jones cannot reasonably do so.

2. In advertising the property the commissioner followed the description of the land as contained in the mortgage and the judgment, the only variance being the omission of one call in the description above narrated. No one refused to bid because he was misled by the error. In fact no one then knew of it; it was discovered after the sale, and the error was then corrected without controversy. We find nothing in this contention that prejudiced the rights of Jones.

3. Jones testified that a rumor became current that there would be no sale upon the day given in the commissioner's advertisement, and that this rumor arose from the fact that Jones had made arrangements with the Lexington Trust Company to lend him money with which to pay the judgment and that the company rejected the loan on the Saturday before the Monday on which the sale was to be held. Jones further testified that he did not start or circulate the report; but he admitted that it arose from the fact that the trust company failed to carry out its agreement with him. In the first place the proof does not show that such a rumor became current. At most only Hall, Cummins, and Long testified that they heard such a rumor, and Cummins testified that he received his information from Hall. Long attended the sale. At most, therefore, only two witnesses claim to have heard of such a rumor, and neither of them says he expected to attend the sale or was affected by the rumor. Moreover the proof is abundant that the attendance was fully as large

as any one could have expected, and that practically all the local dealers in property of this character were present and participated in the bidding.

Moreover, if it had been shown that the rumor existed to the extent claimed by the appellant it would be no ground for setting aside the sale in the absence of proof showing that the appellees participated in spreading the false rumor. The master commissioner sells according to the judgment of the court, uninfluenced by the rumors and gossip of the neighborhood. If he should be controlled by such events there could be no such thing as a successful sale so long as the defendant chose to obstruct it.

4. The proof shows that Lilleston, one of the purchasers, acted as an appraiser, and that before he so acted he told Jones that if the property should sell cheap he would be a bidder. Lilleston testified that when he went to the court house just before the sale the master commissioner asked him to act as appraiser; that he told the commissioner if the property should sell cheap he might be a bidder and did not know whether he could act as appraiser for that reason; that the commissioner said he did not think that would make any difference; that Lilleston then asked his lawyer about the propriety of his bidding at a sale in which he had acted as an appraiser; that his lawyer told him he did not think it would make any difference; and, that he then, in connection with McClintock appraised all the land that was subsequently sold.

We think it is clearly shown that, before Lilleston made the appraisement, he had made up his mind to become a bidder at the sale, and that he carried out that intention by buying eleven pieces of property in connection with his partner Miller as shown by the report of sale.

The general rule is that no person can become a purchaser at a judicial sale who has a duty to perform in reference thereto which is inconsistent with the character of purchaser, or who is so connected with the sale that his individual interest as a purchaser might be inconsistent with his duty. 24 Cyc. 29. In applying this rule this court has held that a master commissioner could not become a purchaser at his own sale. Price's Admr. v. Thompson, 84 Ky. 219; Bagby v. Eversole, 6 Ky. L. R. 365; Penn v. Rhoades, 124 Ky. 798; Sears v. Collie, 148 Ky. 444. And, in Baker v. Weaks, 178 Ky. 520, it was

held that a judge who entered a judgment directing a sale of real estate could not become a purchaser at the sale.

But, it has been held in at least two cases in this jurisdiction that the rule does not apply in all of its strictness to the case of a person who becomes a purchaser at the sale in which he had acted as an appraiser. In Barlow v. McClintock, 10 Ky. L. R. 894, 11 S. W. 29, this court said:

"It is objected that one of the appraisers became interested in the purchase. He swears that he had no idea of making the purchase when he went on the ground, or at the time of the appraisement, and there is no reason for discrediting his statement. He certainly appraised the property, from the testimony before us, at as high a price as it should have been appraised, and as this was done when he had no interest in the bidding, or reason to believe that he would become a bidder, we see no reason for making such an exception available. After examining the testimony, we find a fair sale was made of the property, and, from the proof, a fair value paid for it, and certainly no such sacrifice as would require the chancellor to scrutinize the proceedings with a view of relieving the owner from the effect that any mere irregularity might have had on the sale of the property."

Again, in Ison v. Kinnaird, 13 Ky. L. R. 569, 17 S. W. 633, the court further said:

"It is contended that one of the purchasers at the sale was also one of the appraisers. But it does not appear that he contemplated being a purchaser at the time of the sale and made the appraisement with that view. His having made the appraisement did not disqualify him to become a purchaser at the sale. Nor did his becoming a purchaser affect his previous appraisement, nor shift the burden of proof on the purchaser to show that he was not influenced by selfish motives. It must appear by proof or by circumstances, *aliunde*, that the appraisement was influenced by the appraiser's purpose at the time to purchase the land appraised."

From these declarations it appears that an appraiser may become a purchaser unless he made the appraisement with a view of becoming a purchaser and the appraisement was influenced by the appraiser's purpose to purchase the land, at the time he made the appraisement. Or, as stated in Baker v. Weaks, *supra*, the sale to the appraiser will not be vacated unless it be shown by evidence that "the appraiser intended to become a pur-

chaser before or while engaged in his duty as appraiser, thus making the validity of the purchase by the appraiser depend upon the fact of his having been actually fraudulent in the performance of his duties.''

In Baker v. Weaks, *supra*, the court further said:

''The reason for the distinction made between a sale to an appraiser and a sale by the commissioner to himself or to some one for his benefit, arises, doubtless, from the difference in the duties of the appraiser and commissioner, as the appraisement would not have any effect upon the price of the property, if the sale was fairly made; and the only evil influence, which an interested and designing appraiser could exert, would be to fix the value of the property, by the appraisement, at a sum lower than its value, and thus probably deprive the owner of his equity of redemption; and besides, the appraiser has no duty to perform in ordering, or ratifying the sale, nor in its conduct, except to make the appraisement.'' See also Knight v. Whitman, 6 Bush 51; Vallandingham v. Worthington, 85 Ky. 871; Mastin v. Zweigart, 24 Ky. L. R. 1920, 72 S. W. 750.

The proof in this case wholly fails to show that the acts of Lilleston as an appraiser were influenced in any way by the fact that he expected to become a bidder at the sale; on the contrary Lilleston and McClintock both testified that Lilleston's values in fixing the appraisements were higher than the values made by McClintock.

In Bethurum v. Baker, 166 Ky. 507; the court said:

''The court's power to set aside a judicial sale and order another sale, is not an arbitrary power. It can only be exercised for cause showing such irregularities in the proceedings, or such misconduct on the part of persons interested, or officious intermeddlers, as presumably interfered with the property bringing its reasonable value. But the court must regard the rights of all the parties, including the purchaser, and exercise a legal discretion as to rejecting or comfirming sales.'' See also Hughes v. Swope, 88 Ky. 258; Head v. Clark, 88 Ky. 164.

It is the policy of the law to sustain judicial sales and to encourage bidding by all persons, in order that the property may not be sacrificed. Kidd v. Stephens, 174 Ky. 381. If a judicial sale is to be set aside upon slight grounds and a resale ordered upon a promise of an increase in the purchase price, judicial sales would become so unstable as practically to put a premium upon the bad faith of bidders, and take from the purchaser his right

under the law of having a reasonably speedy determination of his case. As above stated the property brought a fair price, and no one suggests that it would bring a better price at another sale. We find no ground that would justify us in disturbing the sale.

Judgment affirmed.