## Greer et al. v. McAninch.

(Decided December 4, 1928.)

## Appeal from Casey Circuit Court.

1. Judicial Sales.—Where infants' rights are not involved, mere inadequacy of price is not sufficient ground for setting aside judicial sale, unless attending circumstances, such as accident or misfortune preventing party from attending sale, fraud of persons interested therein, misconduct or irregularity in conducting it, etc., were reasonably calculated to cause such inadequacy.

2. Mortgages.—Where mortgage foreclosure sale was regularly conducted in conformity with judgment at time known to mortgagee and mortgagor, neither of whom attended or had representative present, mortgagor did not suggest in deposition that he intended to attend, and mortgagee wrote to his attorney declining to bid, chancellor did not err in refusing to set aside sale, though prospective purchaser told mortgagor just before sale that he was authorized to bid considerably more than sale price, and such attorney was prevented from attending sale, as he expected to do, by call to court.

CHAS. F. MONTGOMERY for appellants.

E. C. MOORE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

On May 4, 1922, L. C. Greer and his wife, Lourena Greer, executed and delivered to A. N. McClure their promissory note for $3,000, payable 12 months from date, with interest at the rate of 7 per cent. per annum. The note was secured by a mortgage on a tract of 120 acres of land located in Lincoln county near the Casey county line. The only payment on the note was one of $150, made on May 23, 1923. On January 13, 1927, and long after the Greers had defaulted, McClure brought this suit to recover on the note and enforce his mortgage lien. The land was ordered sold at the courthouse door in Stanford, was appraised at $1,200, and was purchased by Millard McAninch at $1,400. Both McClure and the Greers excepted to the sale on the ground of "attending circumstances, and gross inadequacy of price." After hearing the evidence the chancellor overruled the exceptions, and the exceptors appeal.

Greer testified that he had owned the land six or eight years, and had paid $5,000 for it. In his opinion the land was worth $3,000. Just prior to the sale R. L. Mullins told him he was going to bid on it for his son-in-law, and was going to put in a bid for $2,400. He did not understand, however, that Mullins was going to start the place at $2,400. When he purchased the land it was very much higher than when the sale took place. R. L. Mullins, who bought the place for his son-in-law, testified that he was authorized to bid $2,000, but if he could get more than six months to pay for it he was authorized to bid $2,500. In his opinion $2,000 would be enough for it at a fair cash sale. When he called on Greer, Greer told him he had lost his last night's sleep about the place. Marion Garrett testified that, in his opinion, the place was worth $2,000, and that if he had been present he would have given that for it. Charles F. Montgomery, who represented Mr. McClure as his attorney, stated that although he was not prepared to bid on the place he had expected to attend the sale, and if he had been there he would not have let the sale go on; that Dick Young had told him that he had a bid on the place of $2,000 for Mr. Garrett. He expected to attend the sale, but had to attend the federal court at Lexington. He had written Mr. McClure about bidding for him on the land, and had not gotten an answer when he left. He told the master commissioner that if anything came from Mr. McClure to open it, and that if Mr. McClure wanted to put in a bid to enter it for him. A letter came from Mr. McClure saying that he did not want to buy the land. The master commissioner testified that the sale was conducted as directed by the judgment. He further testified that Mr. Montgomery called him up from Lexington, and asked him if he had received a letter from Mr. McClure. He replied that he had received a letter, and had opened it. Mr. McClure did not care to bid. Enoch Floyd, who lived about a quarter of a mile from the land, fixed the fair cash value at $1,400 or $1,500. Since 1919 the land had not been kept in grass, had washed a great deal, and the place had gone down a lot. Otis Housing, a farmer whose place adjoined the land in controversy, also fixed the fair cash value at $1,500. Silas Ashley, who had known the farm for 20 or 25 years, fixed its value at $1,500.

To encourage bidding at judicial sales, and make the property bring a fair price, it is all-important that those who bid may do so in the firm belief that the highest and best bid will be accepted. With this end in view, it long has been the settled rule that, where the rights of infants are not involved, mere inadequacy of price is not a sufficient ground for setting aside a sale unless the circumstances attending the sale were reasonably calculated to cause such inadequacy. Circumstances of that character are accident or misfortune preventing a party from attending the sale, fraud on the part of those interested in the sale, misconduct or irregularity in conducting the sale, and the like. Buckner's Trustee v. Buckner, 168 Ky. 302, 181 S. W. 1107; Jones v. Deposit & People's Bank, 180 Ky. 395, 202 S. W. 907; Stump v. Martin, 9 Bush, 285.

Though Greer fixed the value of the property at $3,000, and other witnesses fixed it at about $2,000, several farmers living in the vicinity deposed that the property was worth only $1,500. In view of the conflict in the evidence, it may be doubted if the claim of inadequacy of price has been established, but, conceding that the price was inadequate, there is an absence of attendant circumstances calculated to show that the sale was unfair. The evidence shows that the sale was regularly conducted in conformity with the judgment. There is no suggestion in Greer's deposition that he even intended to attend the sale. Certainly he was not prevented from doing so by Mr. Mullins' statement that he was authorized to bid $2,000 or $2,500 for the property. Though Mr. Montgomery was called to the federal court at Lexington, and was thus prevented from attending the sale, yet, as his client, McClure, had written declining to bid on the property, and he was not authorized to bid for him, it is not perceived how his absence had any effect whatever on the conduct of the sale. It is apparent, therefore, that the case is simply one where the mortgagee and the owner of the land, with full knowledge of the date and time of sale, merely refrained from attending or having some one else present to protect their rights. This is not sufficient. It follows that the chancellor did not err in refusing to set aside the sale.

Judgment affirmed.