## Bevins, et al. v. Lowe, et al.

(Decided June 9, 1914.)

### Appeal from Pike Circuit Court.

1. Deeds—Validity—Capacity of Grantor—Insane Persons.—The mental defect or disease necessary to entitle one to avoid the contracts of an insane person need not be so great as to dethrone his reason or amount to an entire want of reason. It is sufficient if he is insane to such an extent as to be incapable of comprehending and understanding the nature, meaning and effect of his act, the subject of the contract and the probable consequences thereof. He must be insane to this extent at least; mere weakness of intellect not being enough.

2. Cancellation of Instruments—Proceedings and Relief—Weight and Sufficiency of Evidence.—The presumption is that the grantor of land is possessed of capacity to convey, and the burden of proof is upon him who asserts the lack of such capacity. To overcome this presumption there must be more than a mere equilibrium of testimony. And the testimony must be clear and convincing,

especially where the transaction has been permitted to stand for a long time without complaint; and the value of the property has greatly increased.

3. Insane Persons—Property and Conveyances.—The deed of a person of unsound mind will not be set aside as against a bona fide purchaser for value, who buys from the grantee of the person of unsound mind, without notice of such mental incapacity.

J. S. CLINE for appellants.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On August 9, 1893, John B. Harris and his wife, Jane, sold and conveyed to the wife's father, O. B. M. Lowe, a parcel of land in Pike County, Kentucky, at the mouth of Pond Creek, opposite Williamson, West Virginia, containing about two and a half acres.

On December 11, 1897, Lowe conveyed this land to his daughter, appellant, Sarah Ann Slater, as an advancement of the value of seven hundred dollars, the father giving to appellee, Jane Harris, an advancement of equal amount, these advancements being all that either received from the estate of their father.

On June 15, 1900, Harris was adjudged insane upon an inquest held in the Pike County Court, and was committed to the asylum for the insane, where he died on January 10, 1901.

On October 5, 1910, the widow and children of John B. Harris instituted this action in the Pike Circuit Court against O. B. M. Lowe and Sarah Ann Slater, and her husband, seeking the cancellation of the deed mentioned.

Harris and his wife, Jane, each owned an undivided one-half interest in the property conveyed. The cancellation was sought, as to him, upon the ground of mental incapacity existing at the time of the execution of the conveyance; and as to Mrs. Harris, upon the ground that her father took advantage of his parental relation, and obtained the conveyance of her interest for a grossly indequate consideration.

Upon submission and trial, the chancellor rendered a judgment dismissing the petition, of which ruling the plaintiffs complain upon this appeal.

The rule as to the nature and extent of mental incapacity necessary to invalidate the deed of a person of unsound mind is well stated in 22 Cyc., 1206:

"The mental defect or disease necessary to entitle one to avoid the contracts of an insane person need not

be so great as to dethrone his reason or amount to an entire want of reason. It is sufficient if he is insane to such an extent as to be incapable of comprehending or understanding the subject of the contract, its nature and probable consequences. He must be insane at least to this extent; mere weakness of intellect not being enough."

A number of witnesses were introduced on either side to testify upon the issue of the mental incapacity alleged and claimed to have existed upon the part of John B. Harris at the time of the execution of the conveyance sought to be canceled, the evidence for plaintiff tending to show that he had not, and that for defendants that he had, sufficient mental capacity to know and understand the nature, meaning and effect of his act, in executing the conveyance.

The evidence for the plaintiff on this question is to the effect that his mind was not equal to the average; that of the defendant was to the contrary. But few of the witnesses go into detail concerning his acts, though it is shown that in 1891, he went to Hot Springs, Arkansas, on account of his health, and that on two or three occasions at night while he was there, he acted in an irrational manner; but that on the morning following each of such attacks, he had recovered his mental balance and was all right in that respect. This is the only evidence of acts of insanity prior to the execution of the deed in question, though a number of witnesses testify to the general weakness of his mind.

On the other hand, a number of witnesses, among them, two brothers of the plaintiff, Mrs. Harris, and of the defendant, Mrs. Slater, testify that he was mentally sound up to about the time he was adjudged a lunatic in 1900. We are impressed with the evidence of one witness, especially, Mrs. Emily Scott, who is disinterested, and who testified that she and John B. Harris were reared together; that she was present when the deed in question was executed, having gone there to meet the clerk for the purpose of executing some deeds herself; that she had not seen Harris for quite a while, and that on this account they talked together a good deal; that he invited her to go with him to look at a new school house close by, with which he was greatly pleased; that he showed her "all about the school house," "how the windows went up with the weights, and how they went up and down." This witness testified that she was then

with Harris from eight or nine o'clock in the morning until along in the evening some time, and that she discovered nothing at all wrong with his mind.

The evidence preponderates in favor of the defendants, as to the charge of mental incapacity upon the part of Harris existing at the time of the execution of the conveyance.

The presumption is that the grantor of land is possessed of capacity to convey; and the burden of proof is upon him who asserts the lack of such capacity upon the part of a grantor. To overcome this presumption, as indeed any presumption of law, there must be more than a mere equilibrium of testimony.

And, the evidence must clearly establish the charge of such incapacity. In Logan v. Vanarsdall, 33 R., 508, 110 S. W., 321, the court held that where a transaction is old and has been permitted to stand for a long time without complaint, the presumption in its favor is strong, and it will not be set aside except upon clear evidence.

The force of this requirement that the evidence must be clear and convincing is made manifest in the case at bar by the facts proven in respect of the comparative conditions existing with reference to the land in controversy as of the date of the conveyance, and the date of the institution of this action.

It appears in evidence that the year 1893, when the deed was made, was one of general business depression; that at that time, Williamson was a village of no great importance; that it has since developed into a thriving city of some five or six thousand inhabitants; that a considerable increase in land values in that vicinity has taken place; that a bridge has been built across the river, and a railroad constructed from Williamson across the river and up Pond Creek, which passes close by the land here involved; and that while in 1893 the land sold for eight hundred dollars, it, with improvements to the value of about eighteen hundred dollars, placed thereon by appellees, is now worth four or five thousand dollars.

Having these principles in view, we cannot say that the plaintiffs have sustained the burden of proof imposed upon them by the law as the issue of mental incapacity upon the part of John B. Harris, as alleged and claimed to have existed at the date of the execution of the conveyance sought to be canceled.

2. As to the claim of the widow of John B. Harris that her father, O. B. M. Lowe, took undue advantage of

the parental relation and obtained the execution of the conveyance of her undivided one-half interest in the land mentioned for a grossly inadequate consideration, the greater weight of the testimony shows that the consideration was not inadequate.

When asserted as a ground for the cancellation of a conveyance, inadequacy of consideration must be such as will shock the conscience and constitute of itself convincing and undeniable proof of fraud or undue influence. Story on Equity Juris., Sec. 264; Pomeroy on Equity Juris., Sec. 927; 6 Cyc., 286. Such inadequacy is not here shown.

One brother of Mrs. Harris and Mrs. Slater testified that their father offered him this land together with a yellow colt, as an advancement at a valuation of eight hundred dollars, and that he declined it. He says it was reasonably worth five hundred dollars at that time, and no more.

Another brother says when their father gave the land to Mrs. Slater as an advancement of the value of eight hundred dollars, he advised her not to take it at that valuation, as it was not worth the money.

Ten other witnesses for the defendants testified that the value of the land in controversy at the time of the execution of the deed was from $275 to $800.

Appellant argues that the consideration paid was only two hundred and fifty dollars; but it is clearly shown that in addition to the two hundred and fifty dollars cash paid, Harris was indebted to Low in various sums, and the title bond, pursuant to which the deed was made, shows that the price was eight hundred dollars.

3. Nor was it shown that Mrs. Slater, to whom the land was conveyed by her father, O. B. M. Lowe, had actual knowledge of the mental incapacity alleged and claimed to have existed upon the part of John B. Harris at the date of conveyance sought to be canceled, even assuming that such incapacity existed; neither wer' facts shown sufficient to charge her with knowledge thereof; and the rule is that one who purchases for value and without notice, from the grantee of a person of unsound mind, is entitled to protection as a bona fide purchaser. Johnson v. Mitchell, 146 Ky., 382, 142 S. W., 675; Campbell v. Kerrick, 142 Ky., 279, 134 S. W., 186; Logan v. Vanarsdall, 27 R., 22.

The judgment is affirmed.