## Ayers, et al v. Oliver, et al.

(Decided October 19, 1923.)

### Appeal from Allen Circuit Court.

1. **Deeds—Not Set Aside for Inadequacy of Consideration Alone.—** Inadequacy of consideration is not sufficient to warrant the setting aside of a deed, unless coupled with either fraud, undue influence, or mental incapacity.

2.  Deeds—Not Set Aside After Death of Grantor for Inadequacy of
    Consideration.—After the death of the grantor a deed cannot be
    set aside for inadequacy of consideration, where there was no
    fraud or undue influence, and the grantor fixed the consideration.

3.  Deeds—Mere Opportunity for Exercise Thereof Not Proof of Un-
    due Influence.—Mere proof of opportunity for the exercise of un-
    due influence is not sufficient to warrant the setting aside of a
    deed on that ground, but some evidence must be adduced showing
    that such influence was exercised.

SIMS & SIMS and HARPER & DENTON for appellants.

OLIVER & DIXON and GILLIAM & GILLIAM for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Two deeds executed by Edward L. Ayers and his wife,
Pasty Ann, to their son, W. C. Ayers, and to W. C. Ayers
and his wife, H. N. Ayers, to the lands located in Allen
county, Kentucky, were cancelled by the judgment of the
Allen circuit court, from which this appeal is prosecuted.
One of the deeds was made January 12, 1916, and the
other November 6, 1920. The first one conveyed about
151 acres of land while the second one conveyed 10 acres,
totalling 161 acres. This action of the lower court was
based upon the three following grounds:

(1)  That the grantor, Edward L. Ayers, an old and
infirm man, did not have mental capacity sufficient to un-
derstand the nature, character and extent of his contract
and conveyance, and therefore could not vest his grantee
with title.

(2)  Edward L. Ayers was induced to make the said
deed through the coercion, persuasion and undue influence
of the grantee, W. C. Ayers.

(3)  The consideration recited in the deed was inade-
quate to support the conveyance.

It was granted on the last ground only.

Edward L. Ayers, at the time of his death in 1921, was
more than eighty-six years of age, while his wife, Patsy
Ann, was seventy-six years of age when she passed to the
Great Beyond only a few months later. They were the
father and mother of seven children, including some of the
plaintiffs and defendants. The other parties to this ac-
tion are spouses of their children. These old people
owned the farm in question for many years and raised

their family there. As the children married they moved to homes of their own. Appellant, W. C. Ayers, was the youngest, and after he married he moved into the house with his father and mother and lived there for a short while; later he moved into another house on the farm and continued to reside on the place ever afterwards. His house was about 150 yards from the home of his father. He appears to have been the favorite child though the evidence upon this point is not conclusive. Some time about the year 1914 or 1915 a controversy came up in the courts of Allen county in which a right of way over the lands of Edward L. Ayers was involved. He wanted the road located at one place while some of his neighbors and two of his sons-in-law wanted it located at another place. As a result he became much angered at his sons-in-law who opposed his wishes concerning the road. He was never reconciled to them thereafter, and was frequently heard to say in substance that they should "never have the wrappings of his finger from his estate."

In January, 1916, he conveyed the major portion of his lands to his son, W. C. Ayers, and wife for the consideration of $2,500.00, $500.00 being recited as paid in hand and the balance to become due and payable on the death of the grantors, without interest. This is one of the deeds of which complaint is made. This deed, as is claimed by appellant, was intended to convey the entire farm, but after the consideration was recited and the deed prepared in part it was discovered that the deed to Edward L. Ayers for a ten-acre tract which went to make up the 161 acres could not be found and this tract was therefore omitted, with the understanding that it would be later conveyed when the deed made to the grantor was found. The $500.00 was never actually paid. According to appellant he was credited with $500.00 as a gift, being his share of the lands, and the balance, $2,000.00, which was to be paid at the death of the grantors, was to be divided between the other children. It turned out in the evidence, however, that in addition to the $2,500.00 recited in the deed, W. C. Ayers undertook and agreed as a part of the consideration for the conveyance to allow his father and mother to retain control of the farm during their natural lives, he to cultivate it and to pay them one-third of all the crops received for their support and maintenance and to wait upon and care for his parents throughout their lives. This he alleges and attempts to prove he did

so long as they lived. The evidence shows beyond question that W. C. Ayers was a very industrious young man and that he improved the farm very much by his labor. His crops were well cultivated and the one-third which he paid to his parents was amply sufficient for their needs. In addition to this he built their fires, attended to their chores and waited upon them in every way necessary. According to some of the evidence he was at their house from one to six times per day and gave them every attention which a dutiful son would feel obliged to give his aged parents.

This action was commenced after the death of Edward L. Ayers but before the death of his widow, Patsy Ann, who survived him only about three months. The evidence shows beyond question that Edward L. Ayers was one of those old rugged pioneers, of strong mind and fixed purpose, in that part of the country, who, after making up his opinion, rarely ever yielded that opinion to the arguments or blandishments of others. Most all the evidence goes to show he was a very sensible, courageous, far-seeing man; and, further, that he seldom changed his opinion. Even the plaintiffs who sue to set aside the deeds admit he was a man of good sense and strong will at all times except through his sickness immediately preceding his death. A great many of his neighbors were called as witnesses to testify concerning his mental condition at the time of the making of the deed in 1916, as well as at the making of the second deed in 1920, and all agree, with perhaps one or two exceptions, that he was a man of sound mind and good judgment, and once having formed an opinion upon a subject was not easily changed and would not readily yield to argument or persuasion. We think the evidence upon this point is overwhelming, and the learned special judge who sat as a chancellor in the court below in delivering an opinion reached the conclusion that Edward L. Ayers was a man of sound mind and strong will power. It was impossible to reach any other conclusion under the evidence.

It is said, however, that the deeds must be set aside because not supported by sufficient consideration, and this is the ground upon which the chancellor decreed a cancellation of the two deeds. It is hard to say from the evidence that the consideration was at all inadequate. It certainly was not greatly so. Inadequacy of considera-

tion alone has never been held by this court to be sufficient to warrant the setting aside of a deed. It must be coupled with either fraud, undue influence, or mental incapacity. One of sound mind may sell his lands at a very inconsiderable price, provided he is not brought to do so by undue influence. Indeed, he may give them away if that be his wish. After stating the several rules affecting adequacy of consideration, the text of 18 Corpus Juris, page 167, reads:

"It follows from the rules above stated that the inadequacy of the consideration expressed will not affect the validity of the deed where the grantor was capable of making it (Davis v. Yancey, 104 S. W. 697; Lee v. Lee, 2 Duv. 134). Nor will a deed be set aside for mere inadequacy of consideration unless accompanied by fraud or undue influence, unless the inadequacy is so gross as to imply fraud (Bevins v. Lowe, 159 Ky. 439; Finlayson v. Cuyuga Coal Co., 173 Ky. 763); or unless there was on the grantor's part a want of mental capacity to contract (Royce v. Blair, 2 Ky. Op. 528); or a lack of free will and ignorance of his rights (Robb v. Robb, 21 S. W. 580). A mere showing that the grantee got the best of the bargain is insufficient to authorize a cancellation. So, although a conveyance was unwise or improvident, that in itself is not ordinarily regarded as a ground for setting it aside, although in some jurisdictions it is held that a conveyance may be cancelled for that reason, particularly where the grantor has by it deprived himself of his entire property. Gross inadequacy of price, however, furnishes a reason for scrutinizing the transaction; and inadequacy of consideration has frequently been held strong, if not conclusive, evidence of fraud authorizing relief against the conveyance (Brown v. Slaton, 172 Ky. 787), particularly in connection with weakness of mind upon the part of the grantor, or opportunity for the exercise of undue influence by the grantee."

Moreover, it has been held that after the death of the grantor the transaction cannot be impeached for inadequacy of consideration, where there was no fraud or undue influence and the grantor had fixed the consideration. Keagle v. Pessell, 91 Mich. 618.

In considering facts much less favorable than those in this case, this court, in the case of Robb v. Robb, 14 R. 747, said:

"Mere inadequacy of consideration alone is not sufficient ground for setting aside a conveyance of land, in the absence of fraud or deceit of any character, unless the inadequacy is so gross as to raise the presumption of fraud on the part of the grantee or ignorance or mistake or lack of will power on the part of the grantor."

So it appears that Edward L. Ayers, though past 80 years of age but of sound mind, had the power to convey to his son, W. C. Ayers, his lands and to invest him with perfect title thereto, provided this action was not brought about by undue influence or fraud. No fraud is charged save as it is coupled with undue influence. There is absolutely no evidence in the record tending to support the charge of undue influence. True it is said that W. C. Ayers had opportunity to exert undue influence upon his father, and he perhaps was the favorite child, but all the evidence upon that subject goes to show that he did not influence or attempt to influence his father to convey the land to him. Mere proof of opportunity for the exercise of undue influence is not sufficient. Crump v. Chenault, 154 Ky. 187. Some evidence must be adduced showing that such influence was exercised. It appears that the father desired to convey it to his son for reasons of his own. His reasons may not have been good. He may have desired to prevent his two antagonistic sons-in-law obtaining any share in his lands. Whatever his reason, he had capacity, according to the evidence, to convey the lands, and having done so his conveyance cannot be set aside except for fraud or undue influence, or inadequacy of consideration coupled with undue influence or fraud. It is not for courts to reform deeds or wills to conform to their conceptions of right or justice, but to enforce them as made if free from disqualifying deficiencies.

It does not appear that the land was of very great value in 1916, at the time the father sold it to the son. We think that the weight of the evidence is to the effect that it was of a greater value than $2,500.00. It was perhaps worth from $3,000.00 to $5,000.00. The consideration paid, however, by appellant, W. C. Ayers, in the light of all the circumstances, may not have been entirely adequate, but it was not greatly inadequate. The support, maintenance and attention given by him to his father and mother may have been of greater value than the money consideration named in the deeds. Whether it was or not there was sufficient consideration to support the conveyance. When it

is found that the grantor was a man of sound mind and and strong will, and there is no evidence worthy of the name tending to prove the contrary or to prove that appellant influenced or attempted to influence him to convey the lands to appellant, it is at once apparent that there was no meritorious basis for this action

There is some slight evidence in the record that the widow, Patsy Ann, stated to one or more persons on different occasions that she signed the deeds unwillingly; that she "had to contend with two of them," without mentioning their names; that she was not satisfied with the way the deeds were made. The evidence given by the witnesses relating these facts is very vague and uncertain. On the other hand, there are a number of disinterested witnesses who testified positively that they heard the widow say on different occasions that the deeds were made as she wanted them to be made and that it was satisfactory to her, and if it were to do over again she would make the deeds the same way. This evidence is direct and certain.

While we are of opinion that Patsy Ann was a woman of sound mind, she was not as firm and unchangeable as was her rugged old husband. Although she may have made conflicting statements, the great weight of the evidence is to the effect that she approved the deeds and desired that they be upheld.

Neither the reason assigned by the learned chancellor who decided the case below, nor other reasons called to our attention by counsel, were sufficient to warrant a decree cancelling the deeds, or either of them. Consequently the judgment must be reversed for proceedings not inconsistent with this opinion.

Judgment reversed.