## Meek, By, etc. v. Northup, et al.

(Decided December 5, 1924.)

### Appeal from Johnson Circuit Court.

1. Mines and Minerals—Evidence Held Insufficient to Prove Inadequacy of Consideration for Coal Lands.—In action to set aside conveyance of coal land on ground of mental incompetency, in which grantee claimed to have been an innocent purchaser for value without knowledge of grantor's mental deficiency, evidence held insufficient to prove that the land and coal were worth more than grantor received therefor.

2. Vendor and Purchaser—Grantee Who Paid Full Value Without Knowledge of Grantor's Mental Deficiency Held Bona Fide Purchaser.—Purchaser who paid full value for coal and land, on exercise of option, purchased from third party, without knowledge of mental deficiency of owner who had iven option, was a bona fide purchaser, and conveyance to him pursuant to option will not be set aside on the ground of mental incompetency.

W. G. WELLS, J. F. BAILEY and OTTO C. GARTIN for appellant.

CLYDE L. MILLER and HAGER & STEWART for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Cornelius Meek, as next friend of his father, John Meek, began this suit against Jay H. Northup, seeking to set aside certain conveyances made more than thirty-five years ago. He lost his case, and he has appealed.

In 1887, John Meek was the owner of 225 acres of land, which tract is now in litigation. On February 10, 1886, he and his wife had mortgaged this land to Rafe Miller to secure the payment of $150.00. This indebtedness matured February 10, 1887, and John Meek was unable to pay it. On February 14, 1887, L. C. Rittenhouse, to whom Miller had assigned this mortgage, filed suit thereon and at the May term, 1887, the land was ordered sold in satisfaction of the judgment, and Rittenhouse became the purchaser. Subsequently, this bid was assigned to Jay H. Northup.

On February 1, 1887, G. W. Castle had taken an option on the coal underlying Meek's farm. By this option Castle was given the right to purchase and Meek obligated himself to sell the coal under this farm, at any time before August 1, 1887, at the price of $2.36 per acre, and this option had been assigned to Jay H. Northup. On

July 28, 1887, Northup exercised his right to purchase under that option, and although both the coal and the surface already belonged to him under his accepted bid when the land was offered for sale by the commissioner under order of the court, yet he took a conveyance from Meek of the coal, and paid Meek therefor $531.00, deducting the amount of the judgment on the mortgage debt.

John Meek instituted suit against his wife, Catherine Meek, on July 6, 1888, for divorce. She answered and filed a cross action. The case was prepared for trial and resulted in Meek's petition being denied and in a divorce being granted to Catherine Meek, and she was given a judgment against him for $500.00 alimony. Under that judgment the surface of this Meek farm was sold, and Catherine Meek bought it. She assigned her purchase to Jay H. Northup; and on November 18, 1890, the surface of this farm was conveyed to Northup. He was then the owner of both the coal and surface, and he remained in the unquestioned possession of same until September 14, 1910, when this action was begun by John Meek by his next friend, Cornelius Meek, and in his petition he alleges that he was on the 28th of July, 1887, and long before, and at all times since said date, of unsound mind and mentally incapable of transacting any business whatever concerning land or the title thereto, and on all the dates referred to herein, and at all times thereafter he did not and could not comprehend or understand the nature or meaning of any sale or transaction relative to any land, and was on the first mentioned date and at all times subsequent thereto mentally incapable of looking after, or caring for, or protecting his interest in any or all transactions relative to the land herein described.

These allegations were denied by answer and the case prepared and tried, with the result noted in the beginning of this opinion.

Thirty-two depositions were taken. It appears that John Meek has never been of strong mind and has been for many years much interested in religious matters. He had very peculiar religious ideas, and rather unusual views of the Scriptures, which he was prone to discuss, and upon which his mind seemed to dwell. Some of these witnesses seemed to think that he had never been possessed of such mental vigor as to enable him to understand and manage his property. Other witnesses, while admitting he had some mental deficiency, did not think

it was such as would prevent him from understanding what he was doing when these sales were made.

Thus it seems that there was considerable difference of opinion among the witnesses upon the question of the mental capacity of John Meek, to make this conveyance. Some of these witnesses did not know what Meek's mental condition was in 1887, but testified that his mental condition at the time of the giving of their testimony was not good, and that it had been the same during all the time that they had known him. All the witnesses practically agree that there had been no change in John Meek's mental condition.

In Wathen v. Skaggs, 161 Ky. 600, 171 S. W. 193, this court said: "To constitute mental incapacity invalidating his deed, the grantor must have been incapable of comprehending or understanding the subject of the contract, its nature and probable consequences. If he has sufficient mental capacity to know and understand the nature, meaning and effect of his act, then mere weakness of intellect will not invalidate his conveyance, unless coupled with inadequacy of consideration, undue influence or other circumstances of inequitable nature."

In the case of Logan v. Vanarsdall, 33 Ky. L. R. 508, 110 S. W. 321, where an effort was made to set aside a conveyance made thirty years before, it was held that the transaction being so old and having stood without complaint so long, the presumption in its favor is strong, and it will not be set aside except upon clear evidence. That case is very similar to this one. This conveyance was allowed to stand for twenty-three years without any effort being made to set it aside, and during this time, his wife sued him for divorce. She obtained a decree adjudging her $500.00 alimony. She sold the surface of this John Meek farm under that decree, and afterwards sold her bid.

The son who now sues as his next friend, only a few years before he brought this suit, accepted a conveyance from his father, John Meek, of a small tract of land. The action of the wife and the son in doing these things, induces us to believe that they then had no very serious misgivings concerning John Meek's business capacity.

After these transactions in 1887, John Meek has continued to live in this same neighborhood, surrounded by his children, seven in number, brothers, with one of whom he lives, nephews and nieces, to say nothing of friends,

and none of these ever saw fit to begin an action for him as his next friend to set aside the conveyance.

From the evidence, we are not satisfied that this land and coal were worth any more than he got. This property was appraised in preparation for the commissioner's sale in 1887, at $300.00. After Northup got possession of same, Northup got into financial difficulties, and in a bankruptcy proceeding, this land was sold for $350.00. So it does not appear that the price which Northup paid for it was inadequate. There is nothing in the record to show that Northup knew of any mental deficiency of Meek, and as he purchased from Castle the option which Castle had obtained from Meek, he was an innocent purchaser within the rule laid down in the case of Bevins v. Lowe, 159 Ky. 439, 167 S. W. 422, where it is stated that "the rule is that one who purchases for value and without notice from the grantee of a person of unsound mind, is entitled to protection as a *bona fide* purchaser."

Meek's mental infirmity is testified to by three nephews, a brother, a brother-in-law, a sister-in-law, his son and his wife, and all of these people lived right around him for twenty-three years, and if they believed then what they say now, they believed that he had been imposed upon, and they did nothing.

We could not understand this if it were not for mention in the evidence of one of the witnesses of the fact that the number one vein of coal has recently been discovered under this land, and we believe that the discovery of this valuable seam of coal is in some way connected with the discovery of Meek's mental infirmity.

The judgment is affirmed.