## Davenport v. Jenkins' Committee.

(Decided May 25, 1926.)

## Appeal from Warren Circuit Court.

1. Insane Persons—Committee of Insane Person May, Before Entry of Judgment, Enter Appearance and File Answer to Suit Against Insane Person as Though Originally Served with Summons (Civil Code of Practice, Sections 36, 53).—Committee of insane person, though a necessary party to proceedings to sell his land, if not brought before court as provided by Civil Code of Practice, sections 36 and 53, may before entry of judgment, enter appearance and file answer required by court, thereby becoming party to action against insane person as though summons had been served on committee.

2. Insane Persons—Judgment Against Insane Person in Action in which His Committee Filed Answer is Not Invalid Because Summons was Not Served on Committee (Civil Code of Practice, Sections 36, 53).—Where committee of insane person was made party to action, and filed answer on his behalf in manner required by Civil Code of Practice, sections 36 and 53, judgment is not invalid because summons was not served on committee.

3. Insane Persons—Deposition of Alleged Insane Person Held to Show no Imbecility or Unsoundness of Mind.—Deposition of alleged insane person as to business transactions and life held to show no imbecility or unsoundness of mind.

4. Insane Persons—Judgment Finding One of Unsound Mind in Youth is Conclusive Only for Time Being, and on Discharge from Asylum Becomes Rebuttable.—Judgment finding one of unsound mind in his youth is conclusive of mental unsoundness only for the time being, and on his discharge from asylum becomes rebuttable.

5. Evidence.—Law presumes every person to be sane until the contrary is shown, in absence of adjudication on subject.

6. Insane Persons—Lender, Acting in Good Faith in Making Loan to Borrower Adjudged Insane 20 Years Previously, May Recover Loan on Borrower's Restoration to Civil Rights.—One acting in good faith in loaning money secured by mortgage to a person adjudged insane 20 years previously, and not restored to civil rights, is entitled to recover loan and have mortgage enforced on restoration of borrower to civil rights.

CHANEY & DIXON for appellant.

THOMAS, THOMAS & LOGAN, J. M. SIMMONS, V. J. PRITCHETT and W. B. GAINES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Davenport, became the purchaser of lands of appellee, Jenkins, at a decretal sale, and thereafter, within the time allowed by law, filed the following exceptions to the report of sale:

"1.   The record herein shows that at the time of the execution of the note sued on, the defendant, James Jenkins, had been adjudged to be of unsound mind and no order of restoration had ever been made, and for this reason the note sued upon was void, and a judgment based thereon was erroneous.

"2.   At the time of the institution of this action, the defendant, James Jenkins, was of unsound mind, and had been so adjudged, and no order of restoration made, but the action was instituted against said Jenkins as a competent person, and service had upon him alone with no service of summons upon the committee of said Jenkins or the persons having charge of him."

When the exceptions were overruled appellant, Davenport, saved the question by proper exceptions, and now prosecutes this appeal, urging a reversal of the judgment upon three grounds: (a) the note and mortgage sued on are void because executed by Jenkins who had been adjudged insane, some twenty· years before, and not restored to his civil rights, and was subsequently, about forty days after the execution of the note and mortgage, again adjudged incompetent to manage his business, and a committee named for him; (b) the payee in the note was not an innocent holder for value because the adjudication of Jenkins as a lunatic was of record in the office of the clerk of the court, which gave constructive notice; and (c) the committee of Jenkins, the insane person, was not served with process as required by sections 36 and 53 of the Civil Code. Appellee, Jenkins, at the time of the entry of the judgment in this case was about forty-five years of age, a widower with five or six children. Before he was twenty years of age he became sick and was finally adjudged insane and sent to an asylum at Hopkinsville, where he remained only a short time and was released, cured, but was never restored by a court of competent jurisdiction to his civil rights. Some

years ago he married and became the father of the children to whom we have referred. Later his wife died. Two or three years before the institution of this action Jenkins' mother died, the owner of a large boundary of land in Warren county, and Jenkins inherited 200 or 300 acres of it. In September, 1921, Jenkins applied to A. Bloch, a Warren county citizen, for a loan of $1,000.00 and offered to mortgage his interest in the land as security. After some negotiations Bloch loaned the money to Jenkins, taking the note of Jenkins for $1,000.00, secured by first mortgage on Jenkins' undivided interest in the land inherited from his mother. In December following, the father of Jenkins caused an inquest to be held to determine whether Jenkins was competent to manage his affairs and to control his estate, resulting in a judgment declaring Jenkins incompetent to manage his estate, and, appointing the Bowling Green Trust Company committee for him. When Jenkins failed to pay the note, Bloch instituted this action in the Warren circuit court against Jenkins individually, in January, 1921, to recover on the note and to enforce the mortgage. Summons was issued for Jenkins only and it was executed upon him on the 5th of February, 1923. His committee was not made a party and this is the basis of appellant's third complaint. The joint answer of James Jenkins, individually, and of his committee, Bowling Green Trust Company, was filed, setting up the fact that Jenkins had been adjudged of unsound mind some twenty years before and had, subsequent to the making of the note, been found to be incompetent to manage his estate and the trust company named as his Committee, all of which was stated as full and complete defense to the action upon the note and mortgage, with a prayer that the petition of the plaintiff be dismissed and the defendants recover their cost. With the answer was filed as exhibits a copy of the judgment of the Warren circuit court of December 23, 1921, holding James Jenkins to be of unsound mind and incompetent to manage and care for his estate, "but that a commitment to the asylum is unnecessary at the present time," and appointing the Bowling Green Trust Company as committee. In October, 1923, Jenkins filed petition in the Warren circuit court to be restored to his civil rights. Later he moved the court to enter an order vacating the judgment finding him to be incompetent to manage his estate and to restore him to his civil rights and adjudge him competent to manage his estate. Notice

was served upon his committeee, the Bowling Green Trust Company, and John C. Jenkins, his father, of the entry of the motion. Later this proceeding was consolidated with the action of Bloch against Jenkins on the note and mortgage. The Bowling Green Trust Company filed an answer as committee of James Jenkins, setting forth its appointment and qualifications, execution of the duties as committee of Jenkins, and pleading the facts with relation to Jenkins' property and its value and his indebtedness. The court first considered the record appertaining to the restoration of appellee, Jenkins, to his civil rights and entered a judgment decreeing ''that he is competent to transact his business and look after his own business affairs and have charge of his own business.'' And further that ''he be and he is hereby restored to his civil rights.'' Following this the court entered a separate judgment in favor of Bloch against Jenkins on the note and mortgage and adjudged the lands laid off and allotted to Jenkins, or at least that portion not allotted to his children, in lien to Bloch to satisfy the judgment. Section 35 of the Civil Code provides: ''Excepting married women, if a defendant, who is under disability and who is summoned in this state, have a defense: That of an infant or person of unsound mind must be made by his guardian or committee, or by a guardian *ad litem*. . . . The 3rd subsection provides that ''no judgment shall be rendered against an infant or person of unsound mind who is summoned in this state until the regular guardian or committeee, or guardian *ad litem* of such defendant shall have made defense or have filed a report, stating that, after a careful examination of the case, he is unable to make defense.''

It is provided by section 53 of the Civil Code: ''If the defendant be of unsound mind the summons must be served on him and on one of the following named persons, residing in the county, viz.: On his committee; or, if he has no committee, on his father; or, if he have no father, on his guardian; or, if he have no guardian, on his wife; or, if he have no wife, on the person having charge of him. . . . ''

Construing this section we have held that a committee is a necessary party to an action against a person of unsound mind. Frazier v. Frazier, 25 R. 882, 76 S. W. 546. And, further, that when the summons is issued against the lunatic individually, without mention of his committee, but executed in the manner provided by the

Code, the service is good, and the judgment will be sustained. Eversole v. Eastern Kentucky Asylum, 100 S. W. 300, 30 R. 989. The precise question we have here came up in the case of Barry v. Fain's Admr., 172 Ky. 308, and we, in substance, held that the committee of a person of unsound mind should have been served with summons before the entry of judgment, clearly indicating that the appearance of the committee may be entered to a pending action at any time before judgment. Although the committee is a necessary party to a proceeding to sell the land of a person of unsound mind and the committee may be brought before the court in the manner pointed out in sections 36 and 53 of the Civil Code, nevertheless if not so brought before the court the committee may, before entry of judgment, enter his appearance and file the kind of answer required by the Code, and if he does so he thus becomes a party to the action to the same extent and with the same effect and result as if he had been served with summons in the manner pointed out by the sections of the Code, *supra*.

We held in the case of Finzer v. Nevin, etc., 13 Ky. Law Rep. 773, that the filing of an answer by the committee of a person of unsound mind places the lunatic before the court, and the purchaser at the decretal sale of the lands of the lunatic obtained good title, which conclusively answers the objection of appellant in this case. To the same effect is Hundley v. Sumrall, 144 Ky. 73. See also Moran v. Coffin, 194 Ky. 843; Gardner v. Howard, 197 Ky. 615; Adams v. Gardner, et al., 211 Ky. 246. Inasmuch as the committee of Jenkins was made a party to the action and filed answer and made defense on behalf of Jenkins in the manner required by the Code, appellant's complaint that the judgment was invalid because the summons was not served upon the committee is not well taken.

The only evidence introduced was the deposition of appellee, Jenkins, the person who was adjudged to be of unsound mind. This evidence we have carefully read and are unable to discover any imbecility or unsoundness of mind in his answers to the many questions in the long deposition, where he was carefully examined and cross-examined by astute counsel. He related in detail much of the history of his life and all of the history of the transation with appellee, Bloch, in which the $1,000.00 loan was obtained and the note and mortgage executed. He recalled and stated with clearness each

step in the transaction, detailing the number of visits he made to see Bloch about the loan and what he said to Bloch and what Bloch said to him and how the negotiations were closed and the money obtained; what he did with the money after he obtained it and how he conducted his affairs through a period of twenty years or more. After he left the asylum, after his first commitment, he returned to his home and conducted his own affairs as a normal person, trading, buying and selling and carrying on business in his own name without question from anyone, so far as the record shows. It is not shown that appellee, Bloch, knew or had any means of knowing that appellee, Jenkins, had ever been adjudged of unsound mind or had been confined to an aslyum. While a copy of the judgment finding appellee, Jenkins, to be incompetent to manage his estate, made in December, 1921, is filed and made a part of the answer of the committee, no copy of the original adjudication of insanity is filed or made a part of the record, and it would seem from brief of counsel that no such record is to be found in the office of the clerk of either the Warren county court or the Warren circuit court. The judgment finding Jenkins to be of unsound mind in his youth was conclusive of his mental unsoundness only for the time being, and, as soon as he was discharged from the asylum, became rebuttable and continued so until after the making of the note and mortgage. The law presumes every person to be sane until the contrary is shown in the absence of an adjudication upon the subject, and appellee, Bloch, in dealing with appellee, Jenkins, was acting in the usual and customary way when he presumed that appellee, Jenkins, was of sound mind, nothing to the contrary appearing.

"A judgment of inquest finding a person to be mentally unsound is conclusive only for the time being and is rebuttable at any subsequent time, nor does it have any retroactive effect. In Johnson's Committee v. Mitchell, 146 Ky. 382, it was said: 'The fact that a person has been properly adjudged to be of unsound mind is conclusive evidence that such was his condition at the time of the inquest; that it is only *prima facie* evidence of his condition at the time of a subsequent sale and conveyance; and being a mere presumption it may be repelled by oral testimony.' " Rath's Committee v. Smith, 180 Ky. 326.

"This court has often recognized the rule that the contract of a lunatic, in the hands of an innocent purchaser for value, accepted in good faith, must be upheld, and it is also a rule frequently recognized by this court, that one who purchases for value and without notice, from the grantee of a person of unsound mind, is entitled to protection as a *bona fide* purchaser. Bevins v. Lowe, 159 Ky. 439; Johnson v. Mitchell, 146 Ky. 382, 142 S. W. 675; Campbell v. Kerrich, 142 Ky. 279, 134 S. W. 186; Logan v. Varnarsdall, 26 R. 22." Rath's Committee v. Smith, *supra*.

So fas as the record discloses, Bloch acted in perfect good faith in all his dealings with Jenkins, and Jenkins acted in good faith in all his dealings with Mr. Bloch. In his testimony he says he borrowed the money and has not repaid it and that Bloch is entitled to recover the amount and have the mortgage enforced. There is absolutely no showing of bad faith on the part of appellee, Bloch, and the judgment was not erroneous or void upon this ground, or upon any ground to which our attention has been called by counsel for appellant.

Judgment affirmed.