## Dean v. Brown.

(Decided Dec. 6, 1935.)

C. E. RANKIN for appellant.

ERROL W. DRAFFEN for appellee.

Opinion of the Court by Judge Thomas—Affirming.

This equity action was filed in the Mercer circuit court by appellee and plaintiff below, Sally Brown, against the appellant and defendant below, Miller Dean, wherein plaintiff sought specific performance of a written contract entered into between the two for the sale by her to defendant of a tract of land located in Mercer county, Ky. The answer admitted the execution of the contract sought to be enforced, but resisted the relief prayed for upon the sole ground that plaintiff's tendered deed to him did not convey a perfect title because she herself did not possess it, since the one she had was pro tanto defective for the reason set out in the answer, which incorporated as a part of it the record in the case of Dean, Adm'r, v. Dean, formerly pending in the Mercer circuit court, and which was an action for the sale of the landed estate of R. W. Dean for purposes of division of the proceeds among his heirs. The court sustained plaintiff's demurrer filed to defendant's answer, and, upon his declining to plead

further, judgment was rendered sustaining the prayer of plaintiff's petition for specific performance, and, complaining of it, defendant prosecutes this appeal.

The alleged defect in plaintiff's title which she obtained under the judgment in that action was thus averred in defendant's answer: "He states that prior to March 6, 1925, Bettie Louise Langford, then an infant over 14 years of age, Freida Langford, Walter Langford, Willia Langford and Thelma Langford, the latter four being infants under 14 years of age, were the owners between them of a 1/63 undivided interest in the real estate described in the petition, and that all of them were nonresidents of and then absent from Kentucky, the other interests in the real estate being owned by other persons; that on March 5, 1925, R. W. Dean, one of the joint owners of said real estate filed in this court his petition in equity seeking a sale of the land as a whole alleging it to be indivisible without impairing its saleable value, to which petition he made all of the joint owners including said five infant parties defendants; that on said date he made and filed in said action an affidavit setting out the fact that said infants were non-residents of the state of Kentucky, then absent therefrom and sought a warning order and the appointment of a warning order attorney for them; that, although the affidavit was filed no warning order was made further than a notation made on the Clerk's minute or memorandum book stating that a warning order attorney was that day appointed, but no entry thereof was ever made on the order book, or signed by the Court nor endorsed on any of the papers; that thereafter on May 22, 1926, State Bank & Trust Co. of Harrodsburg, Ky., having been previously appointed and qualified in the Mercer County Court as the Guardian of the said three infants, appeared in the Mercer Circuit Court and executed, with sureties the bond required by law in the sales of real estate as provided by section 493 of the Civil Code of Practice; that on May 23, 1925, said Court entered a judgment holding said real estate to be indivisible and directing its Commissioner to sell the same as a whole as therein set out; that thereafter the land was sold, the proceeds collected by the Commissioner and under further orders of the Court distribution was made by paying over to the three infants their respective shares, all of which said Guardian duly received in the action and has since that time invested

and held for said infants; that he makes the original record of said action styled R. W. Dean, etc., Plaintiffs, v. H. L. Dean, etc., Defendants, a part of this pleading the same to be transcribed in full as an exhibit for use on appeal; that the plaintiff, Sallie Brown was one of the joint owners of said land and was a party to the action wherein it was so sold. Now, the defendant avers and charges that the Court ordering the sale of said real estate had no jurisdiction over the persons of said three infants, because there was no process of any nature against them, and the proceedings selling and conveying the title to said property were and are void as to said infants and they still hold and retain their interests in such real estate. He states that on May 6, 1925, Roy E. Graves, filed a report as warning order attorney in the case, but it does not purport to be a report for the three [five] infants referred to.''

Those allegations are sustained by the record of the division action of Dean v. Dean, supra, and to which we shall hereafter refer as the ''division action.'' The court rendered no opinion in sustaining the demurrer to the answer, and we are not informed as to the grounds upon which that ruling was based. It will be perceived that the attack made upon the judgment in the division action is a collateral one, and it is thoroughly settled in this and all other jurisdictions, so far as we are aware, that such attacks will not be sustained for mere errors of the court in rendering the judgment attacked, since they may be corrected only by appeal. Collateral attacks are sustainable, however, when it is made to appear that the court in rendering the attacked judgment did not have jurisdiction of either the subject-matter or of the person whose rights therein were so abortively adjudicated. While lack of jurisdiction, when established by the prevailing rules of practice for that purpose, subjects the judgment rendered to collateral attack, the universal rule of practice requires that the absence of jurisdiction of the court rendering the attacked judgment must affirmatively appear of record in that proceeding. It may not be established by evidence de hors the record. Differently stated, the rule is that every presumption will be indulged in favor of a judgment that is collaterally attacked, and that the alleged invalidating fact or facts are provable only by the record itself, and they must affirmatively appear therein. Steel v. Stearns Coal & Lumber Co., 148 Ky.

429, 146 S. W. 721; Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917C, 171; Caudle v. Luttrell, 183 Ky. 551, 209 S. W. 497; Potter v. Webb, 186 Ky. 25, 216 S. W. 66; Leonard v. Williams, 205 Ky. 218, 265 S. W. 618; Wolverton v. Baynham, 226 Ky. 214, 10 S. W. (2d) 837; Pennington v. Commonwealth, 231 Ky. 494, 21 S. W. (2d) 808; and many others both preceding and following them that might be cited. Whether the court in rendering the judgment appealed from in this case concluded that the invalidating facts relied on in the answer were not established, as required by that rule, since it did not affirmatively appear from the record in the division action that some of the nonresident infants were not before the court by proper constructive service or otherwise, we know not; nor is it made to appear anywhere in the record that the court concluded that the subsequent execution of the bond by the statutory guardian of the infant joint owners of the land, without objecting to the prior invalid procedure therein was an entry of their appearance in the division action so as to cure and waive such invalidity, if any.

In considering the first stated ground upon which the court may have acted, a question is presented which, so far as we have been able to discover, has not heretofore been passed on. It will be noted that the invalidating error or errors relied on within that rule must "affirmatively appear" from the record of the action in which the attacked judgment was rendered; but what is required to constitute "affirmative appearance" has not heretofore been determined by this court so far as we are aware. Of course, every one must admit that the requirement would be satisfied if the record of the action in which the attacked judgment was rendered expressly stated that some necessary jurisdictional fact or action was not found, or taken, or complied with; but whether the mere silence of the record on such matters would be sufficient to meet the requirement of affirmative appearance, in view of the strong presumption of regularity, presents a very much debatable, as well as doubtful, question. It may be that the learned trial judge in this case adopted the view that the record in the division action, though silent as to the necessary steps to give the court jurisdiction of the nonresident infant defendants, yet such silence did not create an "affirmative appearance," from that record, that the court did not have jurisdiction of the infant joint own-

ers, and sustained plaintiff's demurrer to defendant's answer because of such failure to show want of jurisdiction of the court in the division action to render the attacked judgment for the sale of the land involved therein. But, since we have concluded that the second ground supra, that the court may have relied on in support of its judgment, is sufficient to uphold it, we will not undertake to determine the question suggested relative to the first one.

The bond that the guardian executed in this case was not essential to the validity of the judgment rendered in the division action, it being one based solely on subsection 2 of section 490 of our Civil Code of Practice; and section 493 expressly exempts the requirement of the bond in such actions. By the provisions of subsection 1 of section 497 of the same Code, the aliquot portions of infant joint owners in land sold for division, pursuant to authority given by subsection 2 of section 490, shall not be collected by the commissioner making the sale, but remain a lien upon the land until the infant owners arrive at age, unless he has a statutory guardian who may execute bond at any time after the rendition of the judgment, following which the commissioner is authorized to collect the amount of the wards' interest and pay it to his guardian. It was for that purpose that the guardian in the division action executed its bond nearly one year after the rendition of the judgment in that case. The question therefore is: What effect does the execution of that bond by the statutory guardian for that purpose have, if any, upon the validity of the judgment of sale, conceding it to possess fatal errors?

It is the contention of learned counsel for plaintiff in this case that such action on the part of the statutory guardian, without in any manner objecting to the judgment, or to any prior proceedings for and on behalf of its wards, had the effect to enter their appearance in the division action, the consequences of which was a curing of such defects, if any, so as to render the judgment valid ab initio, since the guardian possessed the authority (and did so by its action in executing the bond) to waive for his wards such defects, if any, and rendered them unavailable as a support for the collateral attack made herein by defendant on the division judgment. If that position be true, it is decisive of this case and necessarily results in an affirmance of the judg-

ment. Our conclusion is that plaintiff's counsel is correct in that contention, and which we will now proceed to demonstrate.

In section 195, volume 1, of Black on Judgments, the learned author says, in substance, that appearances by a statutory guardian, in cases where the guardian might prosecute or defend the action in his fiduciary capacity alone, will sustain a judgment affecting the infant's property and render it immune against a collateral attack. We do not understand counsel as questioning that doctrine; his only insistence being that what the guardian did in the division action was not an act sufficient to enter its appearance or that of its wards, and which brings us to the question of what is sufficient in law for that purpose? The general rule is that an appearance, exclusively for the purpose of contesting the jurisdiction of the court of the person of the one whose appearance is in question, is not a general entry of one for all purposes. But, as was said by us in the case of Martin v. Cole, 191 Ky. 418, 230 S. W. 535: "It is equally as well settled that any appearance of the defendant in court for any purpose other than to object to the sufficiency of the service by a motion to quash, or by other appropriate proceedings, will be treated as a general appearance. Among the acts which have been held to constitute the entry of a general appearance by defendant, the following might be mentioned: Filing an answer; motion or application for continuance; motion to paragraph petition; filing a general demurrer; motion to correct the record; motion to strike from the petition; agreement to continue the cause; request that the case be placed at the foot of the docket, or passed until the arrival of defendant's attorney." (Numerous cases and authorities are cited.)

In the later case of Johnson v. Holt's Adm'r, 235 Ky. 518, 31 S. W. (2d) 895, 897, it is said "If he [the party contesting the jurisdiction of the court in the attacked proceedings] goes into court and invokes its action for any purpose *incompatible with the theory that the court has no power or jurisdiction on account of defective service of process,* he thereby submits himself to the jurisdiction of the court for all purposes, and cannot insist thereafter that the court had no jurisdiction." (Our italics.) Such entry of appearance acts may be taken or made by the individual defendant or

his duly employed counsel to represent him in the cause, as is also established by the cases and authorities referred to.

We have consistently held, without variation, in construing the provisions of the Code authorizing decretal sales of land for division among the owners, that infant owners may be represented therein by their statutory guardian alone without the wards being made parties thereto eo nominee. Some of the cases in which that was done are Shelby v. Harrison, 84 Ky. 144; Howard v. Singleton, 94 Ky. 336, 22 S. W. 337, 15 Ky. Law Rep. 309; Hundley v. Sumrall, 144 Ky. 73, 137 S. W. 842; Baker v. Weaks, 178 Ky. 515, 199 S. W. 53, L. R. A. 1918C, 152; Adams v. Gardner, 211 Ky. 246, 277 S. W. 284; Davenport v. Jenkins' Committee, 214 Ky. 716, 283 S. W. 1044; Clark v. Satterfield's Adm'r, 233 Ky. 600, 26 S. W. (2d) 516; and numerous others to the same effect cited in those opinions. That being true, any act taken by the guardian herein during the pendency of the cause "incompatible with the theory that the court has no power or jurisdiction on account of defective service of process" (Johnson Case, supra) had the effect of not only entering *its* appearance in the cause as such fiduciary, but also had the effect of entering the appearance *of its wards* and which necessarily follows from the right of the fiduciary to maintain or defend the actions without making the wards parties thereto, and which, as we have seen, is the prevailing rule of procedure in this jurisdiction in actions to sell land for the division of real property and in which infants are owners or part owners.

Suppose that the guardian, instead of executing the bond in the division proceeding involved in this case, had done so for itself individually in a cause to which it should have been, but was not, made a party from the beginning, for the purpose of enabling it to obtain the proceeds of the judgment or the aliquot part thereof to which it was entitled, could it be successfully contended that it did not thereby enter its appearance in the cause so as to foreclose its right to thereafter object to the jurisdiction of the court in rendering the collaterally attacked judgment? We think not. The execution of the bond according to the express provisions of the Code under which it was done redounded to the use and benefit of its wards, and which was plainly a recogni-

tion by the guardian, as we interpret it, of the right of the court to enter judgment affecting the wards' interest in the subject-matter of the litigation, which he, singly and alone, could inaugurate, defend, and conduct without his ward being a party thereto.

If it should be said that the conclusion we have reached might prove disastrous to the interest of infant wards who own real estate that may be sold for the purpose of division, the answer is that, as above pointed out, the guardian may file the action in his fiduciary capacity without making his ward a party to it at all and likewise he may defend such an action in his fiduciary capacity alone and in either case bind his ward by the judgment rendered therein. That universally approved rule of practice in such cases is subject to the same criticism that might be made against allowing the statutory guardian to execute the bond that was executed in the division action, and thereby cure former defects in the proceedings. In either case the guardian is allowed to so independently act and proceed upon the theory that he will faithfully perform his duties as such to his ward or upon failure to do so he and his bondsman become liable to respond in damages. See annotation to the case of Kromer v. Friday, 32 L. R. A. 684, and the case of Banta's Heirs v. Calhoon, 2 A. K. Marsh. 166.

Further discussion, as we conclude, is unnecessary, since what we have said we deem sufficiently convincing that the judgment appealed from was and is proper.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole court sitting.