## Daniels v. Fortson.

(Decided June 23, 1936.)

S. T. FRUIT and WALTER ROBINSON for appellant.

WHITE & CLARK and HUNTER WOOD for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Effie Daniels sued to set aside a deed; she was unsuccessful and has appealed.

In June, 1933, Effie Daniels was ill. She was afflicted by arteriosclerosis and general nervousness, had been under treatment of a physician since about the first of the year and was unable to work. She has been a cook for 45 years, which covers pretty much all her life, except her childhood. She is now 64. She had saved her money and some years age she bought a lot 50x190 feet that had a three-room house on one end of it, and some years ago she mortgaged it to a building and loan association for $1,100 and built a

four-room house on the other end of the lot. She had reduced this debt very much, but one of the results of her illness was her inability to keep up her building and loan dues; as a result of that she received a letter about her debt which very much alarmed her. She knew of the straightened financial condition of her brothers, and in her perplexity she sent for her cousin, George Fortson, and when he came she told him her tale of woe. He told her he had no money, but that perhaps his son (the appellee) Owen Fortson had some. So he left and sent Owen Fortson to see her, and soon he had her in an attorney's office and had her execute a deed to him from which we will quote the following:

> "Whereas, the party of the first part is indebted to the South Kentucky Building & Loan Association of Hopkinsville, Kentucky, in the sum of approximately $197.69, and ,whereas, the party of the second part has this day paid off and discharged said indebtedness for the party of the first part. Now, in consideration of said payment made, the party of the first part does hereby bargain, sell, alien and convey unto the party of the second part, his heirs and assigns forever, the remainder interest in and to the following described property. * * * Party of the first part is to have the exclusive use and occupancy of said premises during her natural life, but is to keep paid all taxes and assessments against the said property, and will at all times keep the buildings on said premises insured against loss by fire in the sum of at least $1,000.00."

This deed was immediately recorded.

The reading of this record leaves an abiding conviction the old woman thought she was executing a mortgage, yet the paper is a deed that leaves her only a life estate, and it is certain that a deed was what Owen, Fortson wanted.

Soon she came to understand what she had done and employed Mr. James Breathitt to represent her. He wrote to Owen Fortson and tendered him a certified check for $206.55 and asked him to reconvey the property. This Owen Fortson declined to accept, not because of the form of the tender, but because he did

not propose to surrender what he regarded as his bargain. This action was then begun, but in February, 1934, Mr. James Breathitt died, and his son James Breathitt, Jr., undertook to attend to the matter, but he was then busily engaged as a member of the Kentucky Senate, and before he had made any progress he died in October, 1934, and she employed her present counsel.

The testimony of the disinterested witnesses fixes the value of this property at $1,450, and to show just what was the real effect of this transaction we will suppose this property were now sold for that sum, the $205 obtained from Owen Fortson repaid him, the remaining $1,245 divided according to the life tables, and look at the result.

| | |
|---|---:|
| Owen Fortson would get what he put in | $ 205.00 |
| Owen Fortson would get for his bargain | 725.00 |
| Effie Daniels would get | 520.00 |
| Total | $1,450.00 |

The exhibition of these figures to the average reasonable man would shock his sense of justice. This transaction is unconscionable. It is an outrage. The law views with a jealous eye contracts made with the aged and infirm, and will not allow a man who is well and strong and 28, to thus impose upon his cousin who is weak and sick and 64.

This trusting old woman thought she was executing a mortgage; this scheming young man knew he was getting a deed. This transaction was a mistake on her part, a fraud upon his.

Judge Story, in his Equity Jurisprudence, 6. 256, says:

"There may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or some undue influence, and in such cases Courts of Equity ought to interfere, upon the satisfactory ground of fraud."

"Gross inadequacy of price is always a badge of fraud; and sometimes, when the disproportion between the value and the price given is very great, the chancellor may from that fact alone in-

fer fraud. * * * Gross inadequacy of price, always a badge of fraud, becomes an actual fraud when the parties do not deal with each other at arm's length.''

Hunter v. Owen, 9 S. W. 717, 718, 10 Ky. Law Rep. 651.

''It is a well-known rule of law that gross inadequacy of consideration, where the parties are not on equal terms, is regarded as a badge of fraud.''

Brown v. Slaton, 172 Ky. 787, 189 S. W. 1130, 1133.

In answer to the last question put to him on cross-examination, appellee takes the position that this property is not worth $205. Then he will not be hurt by the setting aside of this deed, for fraud.

The court will enter a judgment requiring appellee to reconvey to appellant this property upon payment to him of $206.55. Appellant shall recover her costs both here and in the trial court.

Judgment reversed.