## Vires v. Riley et al.

May 10, 1949.

Rehearing denied October 4, 1949.

Moss Noble for appellant.

Floyd Russell and Williams & Allen for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant by his petition in equity sought cancellation of a deed by which in June 1945 he conveyed to Floyd Riley, his stepfather, his undivided interest in 217 acres of land for a consideration of $200. Alternatively he asked that his mother, Nannie Riley, be ordered to convey to him her undivided interest in a house and lot, in accordance with an alleged agreement made at the time of making the deed.

His petition alleged that when he executed the deed he and his mother agreed that if he would execute the deed to his stepfather for $200 she would convey to appellant her undivided interest in a house and lot in Jackson, but that later his mother declined to convey.

He further alleged that at the time he was just twenty years of age; inexperienced in business transactions and knew nothing of the law in relation to conveyances of real estate, but having faith in his mother and her husband, he believed that she would carry out her promise. He also plead that the consideration was inadequate; that at the time of conveyance his interest was worth at least $1,000; that the deed was made with Floyd's knowledge of the mother's agreement. He asserted ability and readiness to repay the $200 upon execution of a deed to him.

In joint answer appellees admitted the execution of the deed for a full and valuable consideration, but specifically denied all other allegations and asked that plaintiff's petition be dismissed. Some proof was taken and upon submission the chancellor expressed the opinion that the evidence offered by plaintiff failed to meet the requirements of the law necessary "to overthrow the stated consideration." The petition was dismissed and appeal granted.

Appellant in brief admits that appellant was not entitled to have the court direct specific performance, because under the statute of frauds "that contract was unenforceable." It is argued, however, that the evidence as to the agreement "conclusively shows that the mother and stepfather conspired to defraud appellant of his interest."

The proof for appellant shows in substance that his father was killed in a mine accident in 1926, when appel-

lant was about four years of age. Under our compensation law the dependents were paid $4800, most of which was used in their support. As best we can gather from the proof the land in question was bought for $800, and some improvement had later been made, these being paid for by appellees. The deed to the property is not exhibited, but it is said that title was taken jointly in the name of the widow and the two sons.

Appellant enlisted in the Army when 18 years of age, and was in service. In June 1945 he was at home on furlough; he had just passed his twenty-first birthday. He was in need of funds and approached his mother for a loan of $100. He said that she told him that if he would convey his interest in the farm to his stepfather for $200 she would, upon his return from the Army, deed him her interest in the house and lot. He stated that he was inexperienced in business affairs, and ignorant of the laws governing transactions in real property.

The evidence as to value of the land at the time of making the deed showed that it was hilly, very little being fitted for cultivation. There was some small timber on the tract, and on neighboring tracts coal had been mined, but on this particular tract it was not found in marketable quantity. Appellant was of the opinion that the entire tract at the time of conveyance was worth about $3,000, this would make his interest worth about $1,000. Other witnesses testified as to value. One witness said he thought the tract was worth about $10 per acre, and that $200 would be ''calling it cheap for a one-third interest.'' Another who had not seen the land for six or seven years was of the opinion that the tract was worth about $3,000, and another thought a fair value would be about $3500.

Appellees denied emphatically that the mother had at any time agreed to convey to appellant her interest in the city lot. The mother read from a letter of August 1944, in which the son had said: ''About selling the farm, it is all right with me. Will I have to be there to sign the papers? If so I will come up about the 20th of August; if the farm should be sold for $900 I could get a couple of hundred out of it.'' This was not denied.

Mrs. Riley said the matter of her interest in the town lot was never mentioned. Her version was that appellant

was at home on a furlough and asked her to borrow $100 from the bank for him; she said she could not do so, and suggested that he sell his interest in the farm. He asked, ''Who could I sell it to, and I suggested that Floyd might buy it.'' Later it was agreed that Floyd would pay $200 for Edward's interest, and the deed was made. Mrs. Riley's testimony as to how the transaction arose was fully corroborated by the husband, who says that there was no agreement to convey to appellant an interest in the town lot. A 17 year old daughter, who was present and heard the conversation, says that nothing was said about the town lot. Mrs. Riley testified that the money paid to defendants as compensation was mostly used in maintenance for the family; that she had paid for the land $800; the former owner of the land said that he had once sold it for $1300, but it then had merchantable timber on it.

Floyd testified that Edward was 21 years of age; that the transaction occurred as stated by the wife and daughter; that the deal was at ''arms length.'' He said the tract was about a half mile from the highway and had about 2 acres of level land. There was no mineable coal, a few poplar trees and other small timber. He had spent about $600 in replacing a building. Both he and his wife said that the best offers they had on the tract was $900, though he stated that he would not take $200 or more for the undivided interest.

The case turns mainly on the question as to whether or not fraud was practiced on appellant by the alleged agreement of Mrs. Riley to later convey her interest in the town lot. This was a question for the chancellor, and his decision cannot be now disturbed, and counsel recognizing this rule and admitting that the agreement, if made, is not enforceable, insists in brief that the consideration paid was so grossly inadequate as to raise an inference of fraud. Daniels v. Forston, 265 Ky. 81, 95 S. W. 2d 1075. Again that because appellees were mature and experienced, and appellant knew little of business affairs, he was overreached. A reading of appellant's testimony shows him to be a man of intelligence.

The general rule is that inadequacy of consideration alone is not sufficient to justify cancellation of a deed. There must be evidence of fraud, and such must be clear

and convincing. Risner v. Risner, 261 Ky. 359, 67 S. W. 2d 970; Ayers v. Oliver, 200 Ky. 547, 255 S. W. 110. This leaves only the question as to whether or not the consideration was so grossly inadequate as to raise the inference of fraud, or constitutes a badge of fraud. While the evidence is not of convincing character on either side, it cannot be said that the consideration was grossly inadequate. While the witnesses for appellant fixed the value of the entire tract at about $3,000, they concluded that a one-third undivided interest should be worth $1,000. This is not a fair criterion of value of an undivided interest. All the evidence of appellant as to value appears to have been based on the idea that there was valuable timber, and a possibility of marketable coal on the tract; most of the evidence goes to show the contrary. However, these questions of fact were determined adversely by the chancellor, and we find no reason to disturb his finding.

Judgment affirmed.